SALT LAKE LITHOGRAPHING COMPANY ET AL., PLAINTIFFS, *v.* IBEX MINE AND SMELTING COMPANY ET AL., DEFENDANTS. *W. S. McCornick,* Appellant; *Sierra Nevada Lumber Company,* Respondent.

MATERIAL MAN'S LIEN—EXTENT—WAIVER BY ATTACHMENT.

1. A lien for lumber used in several structures on the same tract, under one contract, may exist on the whole, when they constitute one plant.

2. Though lumber be delivered and used in the construction of a granulator two months after the operation of the smelter commenced, it may be included in the lien for the lumber to build the smelter, if the granulator enables it to be more economically operated, and was contemplated as a part of the plant.

3. The Nevada Company did not waive its lien for lumber by the levy of an attachment, afterwards dismissed, on the same property, to secure the same demand.

(No. 8 8. Decided July 28, 1897.)

Appeal from the Third district court, Salt Lake county. M. L. Ritchie, *Judge.*

Action by the Salt Lake Lithographing Company and others against the Ibex Mine and Smelting Company and others. From the judgment, W. S. McCornick appeals. *Affirmed.*

*Frank Pierce,* for appellant.

*Frank B. Stephens,* for respondent.

Zane, C. J.:

This is an appeal by the defendant McCornick from so much of the decree entered by the trial court as adjudged that the lien set up in the cross complaint of the Sierra Nevada Lumber Company was superior to the lien of the mortgage described in his complaint. The plaintiff, the Salt Lake Lithographing Company, filed its complaint against the defendants, in which it asked the court to appoint a receiver with authority to take possession of the property of the defendant, the Ibex Mine & Smelting Company, and convert it into money, and pay its debts according to their priority. The lumber company filed an answer and a cross complaint in the cause, in which it alleged that it entered into a verbal contract with the Ibex Company on the 14th day of September, 1894, to furnish lumber and other building material, to be paid for as delivered, to be used in constructing a smelter, scales, assay office, flumes, ore bins, boarding house, and other appurtenances upon the land of the company,—

describing it as one tract. It was also alleged that the smelter, scales, assay office, ore bins, boarding house, and other structures and appurtenances were to constitute, and did, when completed, constitute, one plant for smelting purposes; that in pursuance of the contract the lumber company furnished lumber and other material to the amount of $6,728, used in the construction of the smelter and other parts of the plant on the piece of ground described; that the first material was delivered on September 14, 1894, and the last on March 27, 1895; that notice of the lien was recorded May 25, 1895; that, after deducting all just credits, there still remained due $2,638, for which a first lien was alleged and claimed. The defendant McCornick also filed an answer and cross complaint, in which he set up a mortgage executed to him by the Ibex Company on March 6, 1895, to secure a note of the mortgagor for $60,000 of the same date, recorded on the 11th day of April of the same year. The lumber company denied that appellant had a lien superior to its own, and appellant denied that the lumber company had any lien; and, if the court should find it had, he claimed his to be superior to it. It is conceded that the Ibex Company owned a mine for which the lumber company also delivered lumber, and the appellant claims that the accounts for material furnished for the respective plants were not kept separate, and that it cannot be ascertained how much should have been charged for materials furnished to each. While all the lumber and other material furnished to the Ibex Mining & Smelting Company to be used at the mine and at the smelter are contained in the same account, the items to be used at the mine and those to be used at the smelter are separate, and the charges for material to be used at each plant can be easily ascertained, and the court below found and al-

lowed only for that used in the construction of the smelter and other structures claimed to belong to that plant. The appellant also urges that the materials for which the lumber company claims its lien were used in several buildings, to wit, the smelter, the blower house, the sampling mill, the ore bins, the boarding house, the superintendent's house, the blacksmith shop, the pug mill, the assay office, and the granulating flume; and that the charges for materials used in each structure should have been kept separately, and that they did not constitute a whole, and that a lien could not be decreed on the entire premises for all. In effect, the appellant insists that a separate lien should have been decreed upon each structure, and the land occupied by it.

If each structure, and the land upon which it stands, could be used for separate purposes, and would be as valuable when so used as when used together as a smelting plant, there would be great force in the claim. But in view of the facts that the lumber was delivered under one contract, and the structures were all erected on the same piece of ground, and they were all to be used together in prosecuting the business of smelting,—the same purpose, the same enterprise,—we are of the opinion that a lien existed on the entire premises for the lumber used in each structure, and that one lien could be decreed thereon for the security of the entire bill, the aggregate. Phil. Mech. Liens (3d Ed.) § 229; *Wall* v. *Robinson*, 115 Mass. 429; *Gilbert* v. *Fowler*, 116 Mass. 375.

The appellant claims that the smelter was completed on January 29, 1895, and that the notice of the lien was not filed for record until May 25, 1895, and that the lumber company did not acquire a lien, because it did not file its notice within 60 days after completing the contract. The last item for material was delivered on March

27, 1895, and was used in the construction of a granulating flume. The removal of the slag from the smelter was necessary, and it appears from the evidence that it could be most conveniently and economically done in the use of the flume. We are of the opinion that the court below did not err in allowing the item for lumber used in its construction, and that the lumber company had the notice recorded within the 60 days given by the statute after the completion of its contract.

It is also urged that the lumber company waived its right to the lien claimed by obtaining and levying an attachment upon the property of the Ibex Company for the same demand before filing its cross complaint. It appears that the attachment lien was not perfected, and that it was dismissed. We are disposed to hold that the lien of the lumber company claimed in its cross complaint was not waived by the institution of the attachment suit and levy of the writ. *Brennan* v. *Swasey*, 16 Cal. 141; *West* v. *Flemming*, 18 Ill. 248; *Association* v. *Wagner*, 61 Cal. 349. The decree appealed from is affirmed.

BARTCH and MINER, JJ., concur.