No. 3770

Second Circuit

COX ET AL. v. ROCKHOLD
(GABLE, Intervener)

(June 2, 1930. Opinion and Decree.)
(July 5, 1930. Rehearing Refused.)

W. J. Hammon and H. W. Ayres, of Jonesboro, attorneys for plaintiffs, appellants.

Moss & Moss, of Winnfield, attorneys for intervener, appellee.

ODOM, J. The above are separate suits, but, as the questions in each are identical and as they were tried together in the district court, we shall consider them as one.

The defendant, S. J. Rockhold, is, it seems, a contractor and builder. He owned a tract of land situated partly within and partly without the corporate limits of Jonesboro, Jackson parish, which tract he subdivided into lots. Beginning in the latter part of November, 1927, and continuing through a period of something over a year, he erected ten small residences on his tract or subdivision, each, it seems, on a separate lot. He built these houses himself on his own property and for his own account.

He employed J. F. Gable to do the plumbing work for all ten houses, and agreed to pay $215 per house for the water plumbing, including fixtures, which consisted of a bathtub, lavatory, commode, hot water tank, and kitchen sink for each house, and agreed to pay $20 additional for the gas plumbing in each house. The contract price for the plumbing in the ten houses amounted to $2,350.

The day on which Rockhold began to build these houses is not definitely fixed, but it must have been in the latter part of November, 1927, as it is shown that Rockhold's contract with Gable, the plumber, was entered into about December 15th, and he began work on that date, there being one and probably two houses completed at that time. As Rockhold was building the houses himself and not by contract, the work seems to have proceeded slowly, so that the last of the ten houses must have been completed more than a year after the first was begun. The testimony does not show whether he was doing work or having it done on more than one house at the same time. It is shown, however, that his building program included the erection of ten houses on his subdivision, and that he made one contract with the plumber, Gable, to do the plumbing work on all ten houses at an upset price of $2,350, including gas plumbing and the fixtures, this being figured at $235 per house.

On March 19, 1928, some three months after the plumber had begun his work on the houses built up to that time, Rockhold mortgaged a portion of this subdivision, including lots on which some of these houses were built, to the plaintiffs, J. E. Cox and Paul F. Stinson, for $7,000, which mortgage was recorded. In November following, he mortgaged to J. E. Cox other portions of the property, including all improvements, for $10,000, which mortgage was also recorded.

In April, 1929, plaintiffs, Cox and Stinson, brought foreclosure proceedings by executory process against Rockhold, the property mortgaged being seized and advertised for sale. But, before the date of sale, the plumber, Gable, intervened, claiming the first privilege on the buildings which he had plumbed, for the unpaid balance due him, and asked that these buildings and lots be sold separately from the other property subject to plaintiffs' mortgages, and that the proceeds be held until further orders of the court. The court ordered a separate sale, and the proceeds held, as prayed for.

Gable, the plumber, made out a sworn statement of his account, and had it recorded on May 18, 1929, which he claims was within sixty days after the completion of the work. The claim of Gable against Rockhold for the balance due him for plumbing the houses is not contested; but the plaintiffs, Cox and Stinson, contend,

first: that Gable has no privilege because his contract with Rockhold for the plumbing was not reduced to writing and no bond given; second, that a sworn statement of his account was not recorded within sixty days after the work was completed, as required by Act 298 of 1926; third, that, if it be held that Gable has a lien, it is subordinate to theirs, having been recorded subsequently. We dispose of these contentions in the order named:

(1) Section 2, Act No. 298 of 1926, which was in force at the time these transactions took place, provides that every . contract entered into for the construction or improvement' of any work on immovable property by any undertaker, general contractor, or master mechanic or other person undertaking such general contract with the owner, shall be reduced to writing, signed by the parties thereto, and shall be recorded before the date fixed for the beginning of the work and not more than thirty days after the date of the contract, "and such recordation shall preserve the liens and privileges which are created by this act on the building or other work of improvement, and on the land on which it is situated, in favor of every undertaker, architect, consulting engineer, contractor, master mechanic, or contracting engineer, and all sub-contractors, workmen, journeymen, cartmen, truckmen, laborers, mechanics, or furnishers of material," etc.

It is contended by counsel for plaintiff that this method of preserving liens in favor of those who perform work or furnish material for the improvement of real estate is exclusive; that one who contracts to do such work as plumbing houses can preserve his lien in no other way than by having his contract for doing the work reduced to writing and recorded.

The error into which counsel has fallen results from the fact that they seem to have overlooked section 12 of the same act which provides that, when the owner himself undertakes the construction of the work for his own account, and "for which no contract has been entered into, or when a contract has been entered into but has not been recorded, as and when required by this act, then any person furnishing service or material or performing any labor on said building or other work may record in the office of the Clerk of Court or Recorder of Mortgages in the parish in which said work is being done or has been done a copy of his estimate or an affidavit of his claim or any other writing evidencing same, which recordation, if done within sixty days after the date of the last delivery of all material upon said property or the last performance of all services or labor upon the same, by said furnisher of material or said laborer, shall create a lien and privilege upon the building or other structure and upon the land upon which it is situated, in favor of any such person who shall have performed service or labor or delivered material in connection with the said work of improvement, as his interest may appear."

It is manifest, therefore, that the method prescribed in section 2 of the act for creating and preserving liens, that is, by having the contract for the work reduced to writing and recorded, is not exclusive. The method prescribed in section 12 of the act "creates liens and privileges" in cases like the one here presented. Rockhold owned the land on which he erected houses for his own account, or "for the account of said owner." He let no contract for the building of the houses; he was his own contractor, his own builder. Gable, the plumber, did precisely what this section of the act says one shall do when he does work for the owner who under-

takes the work of construction for himself. He made out a sworn statement of his account, and had it recorded in the clerk's office of the parish where the work was done. Such recordation, if done in time, created a lien in his favor on the building and the lots on which they were situated.

In the case of Hortman-Salmen Co., Inc., v. White, 168 La. 1067, 123 So. 715, 716, the Supreme Court held that the method prescribed by section 12 of this act is applicable where the owner lets no contract for the erection of the building. See Jahncke Service, Inc., v. McGuire et al., 9 La. App. 698, 119 So. 765.

(2) Counsel contend that Gable's claim was not recorded in time. He recorded a sworn statement thereof on May 18, 1929. Section 12 of the act provides that the recordation of the sworn statement "within sixty days after the date of the last delivery of all material upon said property or the last performance of all services or labor upon the same * * * shall create a lien and privilege upon the building, etc."

The testimony shows beyond question that the last labor performed on this plumbing job was either in the month of April or May, 1929, less than sixty days previous to the date on which the claim was recorded. It was therefore recorded in time. But it is contended that the last work done was only repair work and not "the last performance of all services or labor upon the same" as contemplated under the act. In the case of Hortman-Salmen Co., Inc., v. White, supra, the court said:

"What is meant by the statute, as relates to the recordation of claims, where no contract has been entered into or recorded, is that the claim must be recorded by the claimant within sixty days after the date of the last delivery of material, or the last service performed or labor done, to complete the work"; and that: "The correcting of defects, which may appear from time to time in the work after the building is considered and treated as completed, are not to be counted or deemed as part of the labor contemplated by the statute, in fixing the time, nor should material or services furnished for that purpose be so regarded."

The district judge, to whom we are indebted for a most elaborate and lucid, written opinion, in distinguishing the above-cited case from the one at bar, said:

"Before the plumbing job was accepted by Rockhold it had to be inspected by the town plumbing inspector and receive his O. K. This was done, and some changes were made under the order of the inspector; and when the water and gas were turned on, and the plumbing was seen to function properly, the owner considered the work done according to contract and accepted it. That, according to Rockhold's testimony, was April 5, 1929; and Rockhold failing to settle in full the plumbing bill, Gable made up his claim shortly afterwards and placed it on file for record thirty-six days later. These are facts that are established by the testimony of both Rockhold and Gable, and substantially supported by witnesses, J. B. Gable, J. T. Donaldson and A. L. Myers. And there is no evidence that convinces me that these witnesses swore falsely and no reason why I should not give full faith and credit to the testimony."

Our reading of the testimony convinces us that the plumbing work was not completed until April or May, 1929. The water plumbing was put in first, but the contract called for gas plumbing also, which was not done until some time after all the fixtures were installed. The work was never finally inspected and approved until April or May. The plumber had to go over each of the houses before final inspection and approval, and at which time he not only made corrections, but did additional work to complete the contract.

·The last work done was performance of service or labor for the completion of the work and not repairs or the correcting of defects.

(3) Rockhold's contract with Gable called for the plumbing of ten houses, and the contention is made that the work on each house should be considered as a separate contract, and that the privilege on the first house was lost because the claim was not recorded within sixty days. We again quote the district judge and approve his ruling:

"In the case at bar there was but one contract and transaction between Gable and Rockhold, and in this one transaction a blanket contract was entered into for the plumbing of all ten of the houses Rockhold had planned to build, and did build. The lots were a part of one plot of ground divided only by an imaginary line separating the residences and the lots on which they were built from each other, they all belonged to Rockhold, who was himself doing all the building, and the same character and extent of work was to be done in each and every one of the ten residences. The fact that the plumbing was contracted for at the rate of two hundred and thirty-five dollars per house, aggregating twenty-three hundred and fifty dollars, did not constitute ten separate contracts, independent and distinct from each other. Gable's contract was not completed and exigible until every one of the ten houses had been plumbed in good and workmanlike manner, and the plumbing in every one of the ten houses was functioning properly."

Counsel cite the case of Crowley Lumber Co., Inc., v. Plaffer et al., 4 La. App. 606. The case is not in point. In that case there were two houses owned by different persons and two separate contracts. The court said:

"But the evidence does not show how much of the building material went into Dr. Plaffer's building, nor how much into Mrs. Bonnette's building"; and: "The ownership of the defendants being separate, the privilege provided by the law, C. C. Art. 3249, cannot be in solido."

They also cite the case of Favrot Supply Co., Inc., v. U. S. Fidelity & Guaranty Co., 168 La. 841, 123 So. 593. The distinction between that case and the one at bar is marked. The court found:

"There are two separate and distinct contracts for the construction of two separate and distinct buildings, each contract covering its own particular building, described and referred to therein. The two contracts were entered into by the Sixth District Building & Loan Association for the account of two of its borrowers; each contract being for the benefit and advantage of a separate and distinct borrower."

We find no merit in plaintiffs' contention that their mortgage primed the lien and privilege of the plumber. Section 12 of the act provides that the lien and privilege of mechanics shall be superior to all other claims against the land and improvements, except taxes and local assessments, bona fide mortgages, and vendor's privileges, "if said vendor's privilege or mortgage exists and has been duly recorded before the work or labor is begun or any material is furnished."

Gable, the plumber, began work on the contract in December, 1927. One of the mortgages was recorded in March and the other in November, 1928. The work having. been commenced previous to the recordation of the mortgages, the lien is superior to the mortgages. Capital Bldg. & Loan Ass'n v. Carter, 164 La. 388, 113 So. 886; Gleissner v. Hughes, 153 La. 133, 95 So. 529.

The judgments appealed from in these cases are correct, and we affirm them, with costs in both courts.