## Will B. Miller Co. v. Laval.

Feb. 23, 1940.

William H. Field, Judge.

**56**

W. Scott Miller and Thomas A. Barker for appellant.

W. O. Fields for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Affirming.

On or about December 3, 1936, the appellant, Will B. Miller Company, Incorporated, entered into a contract with one Stich to construct for it twelve houses on Highland Avenue in Louisville at a price of $2,850 per house. Shortly thereafter Stich entered into a contract with the appellee, Laval, to furnish the necessary labor and materials for the concrete work on the houses at a price of $456 per house plus certain additional costs agreed on for extra work. The concrete included in the contract was not only for the foundations and other work on the houses themselves, but included private walks on the property as well as the public walks in front thereof. The foundations for all houses were completed in the latter part of May, 1937, and on seven of the houses all concrete work was completed probably before August.

On September 17, appellee gave written notice to appellant of intention to hold five of the houses, described by numbers, liable for material furnished and labor performed to the extent of $2,420.35, the balance of the contract price due from Stich to appellee, this amount being $456 per house for four of the houses and $596.35 for the fifth. The excess of $146.35 over the contract price of $456 on the last house was either for extra work on some of the other houses in this group or was a balance due on one of the first seven houses. It does not clearly appear which. After giving this notice appellee filed mechanics liens in the County Clerk's office, admittedly within six months after completion of the work.

The appellant sold all of the houses on or before September 10, 1937, and failed to pay appellee the balance due for labor and materials supplied by him in the construction of the houses. This common law action was filed by appellee against appellant for the balance due him by Stich under the contract, it being claimed by appellee that appellant was liable to him by virtue of Section 2467a-1, Kentucky Statutes. Judg-

ment was entered in appellee's favor for the full amount sued for with interest and this appeal is from that judgment.

Section 2467a-1 provides in substance that if the owner of property contracts for labor and material thereon under such circumstances that a lien for payment therefor has attached, or may attach to the property, and shall sell same before the expiration of the time for filing and recording liens thereon, he shall pay for such labor and materials out of the proceeds of sale, provided that if the proceeds are insufficient to make payment in full he shall distribute the proceeds pro rata on all claims for such labor and materials.

It is appellant's contention that the action should have been brought in equity for the recovery of appellee's pro rata part in the money due by appellant to Stich and that in order to have a claim against appellant it was necessary for him to assert a lien against the respective houses located on the single tract of land and that it was necessary to notify appellant within 35 days of the completion of each house that he intended to claim a lien upon that house for the labor and materials supplied by him on the house. Appellant further contends that as to the five houses on which appellee sought to assert a lien the appellee, as sub-contractor, was required by Section 2463, Kentucky Statutes, to notify appellant within 35 days after the last item of material or labor was furnished of his intention to hold the property liable and that he failed to do so because the houses were completed and the last item of material and labor furnished more than 35 days prior to the notice given by appellee on September 17, 1937.

As to the appellant's first contention it is sufficient to say that, even though the action should have been an equitable one, no prejudicial error requiring a reversal appears to have been committed by the trial court's refusal to transfer the action to equity since the action proceeded and was tried practically as such. Had appellant shown in its answer that other mechanics and materialman were claiming liens against the property and that the proceeds from the sale thereof in its hands were insufficient to pay all these claims and sought to have such claimants made parties, this course would have required a transfer to equity but it did not do so.

The failure of the trial court to transfer to equity, if error, was not that character of prejudicial error justifying a reversal of the judgment.

If the five houses on which the materialman's lien was asserted by appellee were completed at the same time and within 35 days prior to September 17, 1937, the date of the notice of intention given appellant by appellee, then all other questions are eliminated except as to the $146.35 excess, because under Section 2467a-1 when appellant sold the houses within that 35 day period, it became liable to appellee to the extent of the proceeds of sale in its hands and the proceeds are admittedly sufficient to pay the claim.

The trial court found that the five houses were completed at the same time and within the 35 days prior to September 17, 1937, the date appellee gave the notice. Appellant is most insistent that the houses were completed prior to August 9, more than 35 days before the giving of the notice but it seems to us that the evidence preponderates in favor of the trial court's finding. Much reliance is placed by appellant on a memorandum made by Mr. Miller directing payment to Stich of certain amounts due under the contract, reciting completion of the houses prior to August 9. Mr. Miller testifies that prior to making this memorandum he visited the property and ascertained that the houses had been completed and that the money would not have been paid Stich had this not been so. Other witnesses also testify to completion of the houses prior to August 9th and included in these is a witness, Burkholder, who had moved into one of the houses at that time and who says it and the other houses were then completed. As opposed to this testimony however, we have the testimony of Chester Waterbury who sold to appellee 12,000 pounds of sand, 10,000 pounds of gravel and a quantity of cement and delivered these materials to this project on August 14, 16 and 17. He filed drayage tickets showing deliveries on these dates. The appellee and numerous witnesses testify that this material was used on the project in the construction of concrete walks and door sills for the houses. It is true a major portion of all the walks had been constructed at this time, but it appears to be established definitely that numerous blocks were left out of the walks to permit plumbing work and connections

to be made. It is also proven beyond question that the door sills in each of the five houses were laid somewhere close to or later than August 21. After a careful examination of this evidence we are convinced that a substantial portion of the work was completed as late as August 17, and probably later.

It is contended by appellant that any work done by appellee on the contract within the 35 days prior to September 17, if done, was either repair work or work done with the intention of keeping the lien alive and was not effective for that purpose. Henry Koehler & Company v. Hines, 185 Ky. 270, 214 S. W. 906, is cited to support this contention. We do not regard that case as controlling however because there the material delivered was an insignificant amount and was not actually used in the house. The court held that it was obvious that the purpose of the delivery was to bring the notice within the time allowed and did not have the effect of doing so. In the instant case the material furnished and labor performed within the 35 day period were substantial in amount and essential to the completion of the contract.

As to the excess of the $146.35 over the contract price of $456, if that was for extra work on one or more of the last five houses, the conclusions announced are sufficient to demonstrate appellee's right of recovery. If this excess was for a balance due on one of the first seven houses, which were completed more than 35 days prior to the notice of intention, appellee is still entitled to recover for the reason that we regard the contract between him and Stich as well as the one between appellant and Stich as a single contract and not as one severable as to each house. While the total consideration was arrived at by multiplying the number of houses by $456, the contract was for the building of a number of houses on one tract of land and was to be performed as one contract. The work was done on all houses more or less at the same time and the conduct of the parties indicates that it was treated and considered as a single contract. Books were kept and charges made by appellee on the project as a whole and payments were made in the same manner by Stich. The intention of the parties determines whether a contract is to be treated as an entirety or as severable. O'Bryan v. Mengel Company,

224 Ky. 284, 6 S. W. (2d) 249. We have little difficulty in concluding that the parties intended this as a single, not a severable contract.

Since the appellant sold the houses before the expiration of the time. for filing appellee's lien and at a time when his lien might attach to the houses, appellant became liable by virtue of Section 2467a-1, to pay appellee out of the proceeds of sale. The trial court correctly so held.

Judgment affirmed.