**HABITAT, INC., and M. A. Mills, Trustee, Appellants,**

**v.**

**Bill McKANNA, Appellee.**

**No. 4749.**

Court of Civil Appeals of Texas, Eastland.

Dec. 27, 1974.

Rehearing Denied May 23, 1975.

Gerald R. Coplin, Passman, Jones, Andrews, Coplin, Holley & Co., Dallas, for appellants.

Fred R. Brown, Brown, Brown & Bowen, Inc., Garland, for appellee.

McCLOUD, Chief Justice.

This is a suit by Bill McKanna for debt and foreclosure of a mechanics' and materialmen's lien. McKanna entered into an oral contract with Town East Real Estate Agency, Inc., to provide plumbing materials and labor in connection with the construction of 42 townhouses to be built on land owned by Town East Real Estate Agency. Plaintiff alleged he was owed $14,300 for labor and materials furnished. McKanna added as defendants, U. S. Financial-Gulf & Mountain, Inc., M. A. Mills, Trustee, and Habitat, Inc., alleging they claimed an interest in the property in question.

In a nonjury trial the court awarded McKanna a $14,300 judgment against Town East Real Estate Agency and U. S. Financial-Gulf & Mountain, Inc. The court further held that plaintiff's mechanics' and materialmen's lien was valid and ordered its foreclosure. The judgment provides, however, that plaintiff's lien is inferior to a $64,000 vendor's lien and directs that such superior lien shall be extinguished by the proceeds of the sale before plaintiff's mechanics' and materialmen's lien is satisfied.

Defendants, U. S. Financial-Gulf & Mountain, Inc., M. A. Mills, Trustee, and Habitat, Inc., have appealed. Town East Real Estate Agency, Inc., has not appealed. We affirm in part and reverse and render in part.

The trial court found that plaintiff and Town East Real Estate Agency, Inc., entered into an oral contract in September of 1971 whereby plaintiff would do plumbing work on 42 townhouses to be built on the subject property for a total contract price of $27,300; that Town East paid plaintiff $13,000 in the form of "draws" as the work progressed; that plaintiff completed his work on or about March 21, 1972; that plaintiff prepared and filed his affidavit for record in the mechanics' and materialmen's lien records on June 10, 1972; that

Town East became the record owner of the subject property by deed dated October 16, 1970, and recorded October 20, 1970; that Town East executed and delivered to Fort Worth Mortgage Company a $450,000 note secured by a deed of trust covering the subject property; that both instruments were dated September 29, 1971, but the deed of trust was not filed for record until November 19, 1971; and, that plaintiff commenced visible work on the job site on October 27 or 28, 1971.

Defendants first contend the trial court erred in holding that plaintiff had a valid lien on all 42 lots. They argue that plaintiff and Town East agreed upon a price of $650 per unit and that plaintiff knew at the inception of work how much of the debt each lot was responsible for and that each lot was a separate and distinct parcel. The record reflects that plaintiff was paid $13,000 which defendants assert was for work performed on 20 units and since plaintiff was not able to testify as to which units or lots he had been paid for he was not entitled to a "blanket lien" on all 42 townhouse units.

Plaintiff filed his lien on the following described land:

"Such property being known as 11902, 11906, 11910, 11914, 11918, 11922, and 11926 Brook Valley in the City of Balch Springs, Dallas County, Texas, and being more fully described as follows:

Being Lots One (1) through Forty-Two (42), in Block "B" of the Green Valley Townhouses Addition, an addition to the Town of Balch Springs, Dallas County, Texas."

Defendants contend that "townhouses" should be treated as separate and distinct parcels of land and since plaintiff recognized that the townhouses were designed for separate sale he entered into a contract to perform labor and supply materials for 42 units at a set price per unit.

The trial court found that the contract was for a total price of $27,300, and plaintiff had been paid a "draw" of $13,000 leaving a balance owed of $14,300. Plaintiff testified he gave Town East a price on the "complete job" which he computed on the basis of $650 per townhouse unit.

In Lyon v. Logan, 68 Tex. 521, 5 S.W. 72 (1887), the court said:

"When materials have been furnished under a single contract for buildings erected on two or more contiguous lots owned by the person to whom the material is furnished, we see no reason why the lien should not attach to all the lots; and it would be exceedingly unreasonable to require the person who furnishes the material in such a case to ascertain how much of the material is placed in each house. This is a matter under the control of the owner of the property improved; and, if he does not see proper to make separate contracts for material to be used on each lot, he cannot be heard to say that a lien does not attach upon all the lots upon which the material is used."

The rule is stated in 38 Tex.Jur.2d § 47, page 604, as follows:

"Ordinarily, a mechanics' or materialmen's lien does not attach to premises separate and distinct from those on which the improvement or repairs were made. That lien may, however, extend to more than one lot or tract, provided the owner has chosen to consider them as a unit in contracting for the improvement; that is, if the improvement is made under an entire contract for the whole and is located on one body of land, it is one improvement, though there are several separate structures. As long as the owner treats the lots as one property, by making one contract for material to be used on all of them, without designating what part of the material is to be used on lot, the materialman may treat the lots as one piece of property in

fixing his lien. In order for the lien to extend to two or more lots or tracts it is necessary that they should be contiguous, otherwise they cannot be necessarily connected with the improvement; the statute determines, however, the extent of the statutory lien and not the contract between the parties."

The record contains evidence to support the trial court's finding that plaintiff and Town East entered into a single contract which covered all of the 42 townhouses. We hold that plaintiff had a valid lien on all 42 lots.

We are next confronted with a priority of liens question. The court found that approximately $65,000 of the funds advanced by Fort Worth Mortgage Company were used by Town East to pay off a prior vendor's lien which was created when Town East acquired the property. The record reflects that the Fort Worth Mortgage Company note and deed of trust were assigned to U. S. Financial-Gulf & Mountain in February of 1972. The court found that Town East defaulted on the note; that M. A. Mills was appointed substitute trustee under the deed of trust; that Mills caused to be posted the statutory notices provided in the deed of trust for a trustee's sale to be held on November 7, 1972; that Mills, substitute trustee, executed and recorded a deed to subject property conveying it to U. S. Financial-Gulf & Mountain for an alleged consideration of $1,000 cash bid by U. S. Financial-Gulf & Mountain at a trustee's sale allegedly held on November 7, 1972; that U. S. Financial-Gulf & Mountain then executed a deed back to Mills, trustee, for a consideration of $485,000 in January of 1973; and, that Mills then executed a deed conveying subject property to Habitat, Inc., in consideration of its taking the property subject to such $485,000 note.

The trial court's judgment recited that the foreclosure by Mills was void because "no sum of money was paid or re-

ceived." In its findings of fact the court found that a sale of the property for $1,000 on November 7, 1972, would be for a "grossly inadequate consideration," but found that the sale to M. A. Mills, trustee, for $485,000 was the true consideration received by U. S. Financial-Gulf & Mountain rather than the $1,000.

Mills testified that Charles Hagan, an agent for U. S. Financial-Gulf & Mountain, was present at the trustee's sale and bid $1,000. Mills stated that Hagan did not actually give him $1,000, however, the record reflects a credit on the note for that amount.

In Thomason v. Pacific Mutual Life Ins. Co. of California, 74 S.W.2d 162 (Tex. Civ.App.—El Paso, 1934, writ ref.), the mortgagee's cash bid was not actually paid in cash, but was applied as a credit upon the note. The court held that the credit upon the note was equivalent to receiving cash.

We hold the trial court erred in holding the foreclosure sale by M. A. Mills, trustee, was void.

The $450,000 Fort Worth Mortgage Company deed of trust was not recorded until after plaintiff had visibly started working on the project. The trial court held that the deed of trust lien which was assigned to U. S. Financial-Gulf & Mountain was superior to plaintiff's lien to the extent funds were used to pay off the prior $64,000 vendor's lien. Plaintiff has not challenged this holding by the trial court.

The court held that U. S. Financial-Gulf & Mountain received by virtue of the foreclosure sale excess consideration over and above the amount of the $64,000 vendor's lien and plaintiff's $14,300 mechanics' and materialmen's lien and, therefore, U. S. Financial-Gulf & Mountain was indebted to plaintiff in the amount of $14,300.

We agree with the trial court's holding and find some evidence to support it.

▬ The evidence showed that Fort Worth Mortgage Company loaned Town East $450,000 on the property in September of 1971. On November 7, 1972, M. A. Mills, trustee, conducted a trustee's sale whereby he purported to convey the property to the then mortgagee, U. S. Financial-Gulf & Mountain for $1,000. Within a few weeks U. S. Financial-Gulf & Mountain sold the property back to Mills, trustee, in consideration of his $485,000 note and thereafter, Mills, trustee, conveyed the property to Habitat, Inc., who bought subject to Mills' note. We think the court could reasonably find from these facts that the true consideration received by U. S. Financial-Gulf & Mountain was not $1,000 as recited in the trustee's deed, but $485,000 as evidenced by the subsequent transactions.

▬ The $64,000 purchase money vendor's lien was included in the $450,000 deed of trust which was foreclosed. The foreclosure cut off plaintiff's inferior mechanics' and materialmen's lien. Irving Lumber Company v. Alltex Mortgage Company, 468 S.W.2d 341 (Tex.1971). The trial court held, however, that only that portion of the $450,000 deed of trust representing the prior purchase money lien was superior to plaintiff's lien since the deed of trust was recorded subsequent to plaintiff's visible commencement of work. Even though the foreclosure extinguished plaintiff's lien he is, we think, nevertheless, entitled to recover money damages from the mortgagee at the foreclosure if at such time the mortgagee received consideration in excess of the $64,000 purchase money lien. In Irving Lumber Company v. Alltex Mortgage Company, supra, the court noted that the mechanics' and materialmen's lien holder did not seek any of the proceeds in the hands of the party foreclosing the superior mortgage. In the instant case plaintiff sought such excess proceeds and the court found that U. S. Financial-Gulf & Mountain received consideration over and above the $64,000 superior vendor's lien and the $14,300 mechanics' and materialmen's lien.

The trial court's judgment awarding plaintiff a judgment against U. S. Financial-Gulf & Mountain, Inc., for $14,300 is affirmed. That portion of the judgment holding the foreclosure void and decreeing a foreclosure of plaintiff's mechanics' and materialmen's lien is reversed and rendered.