C. W. HAGLER, d/b/a H & H Builders, Appellant,

v.

CONTINENTAL NATIONAL BANK OF FORT WORTH, et al., Appellees.

No. 8419.

Court of Civil Appeals of Texas, Texarkana.

March 29, 1977.

Tom James, Dallas, for appellant.

Sam J. Day, McDonald, Sanders, Ginsburg, Phillips, Maddox & Newkirk, Fort Worth, for appellees.

CORNELIUS, Associate Justice.

The opinion formerly issued in this cause is withdrawn and the following is substituted therefor.

■ Appellant, C. W. Hagler, brought suit against Appellees, Continental National Bank of Fort Worth and Frank McDowell, one of the Bank's officers, for declaratory judgment declaring that his mechanic's and materialman's lien against certain real estate was superior to a deed of trust held by the Bank, and to enjoin the Bank's foreclosure of its lien. The foreclosure sale was temporarily restrained, but ultimately was carried out under an agreed order. The injunction question is therefore moot and has passed out of the case. In a trial before the court, judgment was entered declaring that appellant's mechanic's lien was inferior to the Bank's deed of trust lien and that appellant should take nothing.

This action arose out of the ill-fated plans of Crystal Properties, Inc. to purchase land and build and operate a dinner theater thereon. Appellant was the general contractor for the construction. The negotiations between Crystal Properties and appellant antedated the acquisition of the land. A standard AIA form Construction Contract was signed on December 18, 1973. It provided for a construction price of $405,000.00 which was subsequently increased to $465,177.38 as the result of "change orders." It further provided that construction would begin on January 2, 1974, and would be completed within 120 days. At about the time the construction contract was being negotiated, Crystal Properties was also negotiating with the Appellee Bank for a loan to finance the purchase of the land and the

construction of the theater. On December 26, 1973, the loan was extended, title to the property was acquired by Crystal Properties, and the deed of trust to the Bank was executed. The loan was for $555,000.00, of which $132,000.00 was for purchase of the land. It was anticipated that the remainder would be used to finance construction of the theater. Appellee Bank advanced all $555,000.00 of the loan proceeds during the construction. Construction was completed and the theater opened in October, 1974. Crystal Properties failed to pay some $96,673.00 due appellant on the construction contract, whereupon appellant filed his mechanic's and materialman's lien affidavit for that unpaid balance. The theater fell into financial trouble and was closed on June 30, 1975. Crystal Properties also defaulted in the payment of the Bank note, which resulted in the Bank's foreclosure of its deed of trust.

The trial court's judgment that appellant's lien was inferior to that of the Bank's was based upon findings of fact to the general effect that (1) the Bank's deed of trust had its inception prior to appellant's lien, as it was executed before any construction began or materials were delivered pursuant to the construction contract, (2) $132,000.00 of the Bank's loan represented purchase money for the acquisition of the property, secured by a vendor's lien, (3) the Bank advanced to Crystal Properties the full $555,000.00 represented by the Bank's note and secured by its deed of trust, and (4) regardless of which lien was prior in time, appellant was estopped to claim that his mechanic's lien was superior to the Bank's lien because the construction contract provided that construction would begin on January 2, 1974, a date subsequent to the execution of the Bank's deed of trust.

Appellant concedes that the Bank's deed of trust was superior to his mechanic's lien insofar as the $132,000.00 representing the purchase price of the land is concerned and that foreclosure by the Bank effectively extinguished any right of foreclosure he may have had, but he nevertheless contends that his lien is superior to the Bank's as to any of the foreclosure proceeds in excess of the purchase price, and that he is entitled to judgment against the Bank for $96,673.00 of such excess proceeds under the principles discussed in *Irving Lumber Company v. Alltex Mortgage Company*, 468 S.W.2d 341 (Tex.1971) and *Habitat, Inc. v. McKanna*, 523 S.W.2d 787 (Tex.Civ.App. Eastland 1974, no writ). To be so entitled, appellant's lien must have had its inception prior to the execution of the Bank's deed of trust. Section 1 of Article 5459, Tex.Rev.Civ.Stat.Ann. (Supp. 1976–1977), provides as follows:

"Section 1. The lien herein provided for shall attach to the house, building, improvements or railroad for which they were furnished or the work was done, in preference to any prior lien or encumbrance or mortgage upon the land upon which the houses, buildings or improvements, or railroad have been put, or labor performed, . . . *provided, any lien, encumbrance or mortgage on the land or improvement at the time of the inception of the lien herein provided for shall not be affected thereby,* and holders of such liens need not be made parties in suits to foreclose liens herein provided for." (Emphasis supplied.)

Section 2 of Article 5459, Tex.Rev.Civ.Stat. Ann. (Supp.1976–1977), defines inception of the lien as follows:

"Sec. 2. The time of the *inception of the lien,* as used in this article, *shall mean the occurrence of the earliest of any one of the following events:*

(a) *The actual commencement of construction of the improvements or the delivery of material* to the land upon which the improvements are to be located for use thereon for which the lien herein provided results, *provided such commencement or material is actually visible from inspection of the land* upon which the improvements are being made; or

(b) *If the agreement* for the construction of the improvements or any part thereof or the agreement to perform labor or furnish material . . . *is writ-*

*ten, the recording of such agreement . . . ; or*

(c) *If the agreement for the construction of the improvements or any part thereof or the agreement to perform labor or furnish material . . . is oral, the recording of an affidavit in the Mechanic's Lien Records of the county in which said land is located stating that the lien claimant has entered into an agreement with the owner of such property . . . for construction of improvements thereon, . . . "* (Emphasis supplied.)

Appellant's construction contract was not recorded. Thus, for appellant's lien to have had its inception prior to the date of the Bank's deed of trust, construction or delivery of materials must have been accomplished prior to December 26, 1973, and the construction or materials must have been actually visible from an inspection of the land. The trial court found to the contrary, and appellant attacks that finding as being based upon insufficient evidence or as being so against the great weight and preponderance of the evidence as to be manifestly unjust.

■ Evidence on the question of when materials were delivered or construction began was conflicting. Appellant testified that two pier holes were drilled on the property in August of 1973 and that some grading or clearing of the site was accomplished sometime before December 26th. He also stated that some reinforcing steel was delivered to the site prior to December 26th and he produced a check dated August 16, 1973, for $1,078.40 payable to Allied Steel which he said represented payment for the steel. Mr. Cardwell, the general superintendent for appellant, testified that he sent a tractor and truck to the site around December 1, 1973, and cleaned it of rubbish. He said the steel was delivered to the site on December 10, 1973, at which time a toolhouse was also placed on the site. Mr. Hooper testified that he drilled test holes on the site for appellant. The holes were fifteen or sixteen feet deep. Mr. Hooper said it looked at the time as if the site might have been graded at one time but had then been allowed to grow back in grass. He could not be certain when he drilled the holes but thought it was before Christmas of 1973.

For the appellee, Mr. Boazman, a former employee of the Bank, testified that he attended a ground-breaking ceremony in late January of 1974 and that there was no visible sign of improvements or construction work at that time. He walked over the site and observed no evidence of grading or construction of any kind. Mr. McDowell also attended the ground-breaking ceremony and observed the site. He testified the premises were still grassy, the grass had not been graded off the site and there was no material or construction visible, but only a small structure prepared for the ceremony itself and two bulldozers to be used for the ground-breaking. Mr. Cullum also attended the ground-breaking ceremony. He testified that he made arrangements to get the bulldozers from appellant to be used for the official or symbolic ground-breaking. He identified eight photographs which were taken at the ceremony and he testified they accurately portrayed the condition of the site at the time. The photographs show the site from various angles and show only the bulldozers and the structure testified about by Mr. McDowell. Appellee disputed that the $1,078.40 check to Allied Steel was for the Crystal Palace job, and brought out that appellant bought considerable quantities of steel from Allied for other jobs at about the time involved in this controversy. In rebuttal, appellant testified that the Crystal Palace job number was on the voucher of the check to Allied Steel which he introduced. Testimony was also elicited from Mr. McDowell that he did not visit the building site prior to the ceremony and made no effort to determine, prior to making the bank loan, whether or not construction had begun.

There was no indication or intimation that, once construction began or material was placed on the land, it was subsequently destroyed or removed. Therefore, the trial court could reasonably infer, that had such

construction begun or material been placed on the land prior to December 26th, it would have still been there and would have been visible in January when the ground-breaking ceremony was held. There was ample testimony, confirmed by the photographs, that nothing of the sort was visible at the time of the ground-breaking ceremony. Although appellant's witnesses testified positively that materials were delivered prior to December 26th, the trial court was not required to believe appellant's evidence but could conclude from all the circumstances that no material had been placed on the land or construction begun prior to December 26, 1973. From the evidence in this record, we cannot say such a conclusion is based upon insufficient evidence or is against the great weight and preponderance of the evidence. The finding is therefore sufficient to support the trial court's judgment that appellant's lien did not have its inception prior to the Bank's lien and was therefore inferior to it.

Our determination of the foregoing question renders a discussion of appellant's other points unnecessary. The judgment of the trial court is affirmed.