## Adams v. Hambrick.

(Decided December 18, 1914.)

### Appeal from Grant Circuit Court.

1. Landlord and Tenant—Lease—Failure to Give Possession—Instruction.—In an action for damages for breach of a rent contract, it was error to instruct the jury to find for plaintiff if he rented only a portion of the house and defendant refused to put him in possession, where the circumstances did not amount to a refusal if, as a matter of fact, only a portion of the house was rented.

2. Instructions—Measure of Damages—Failure to Furnish Guide for Determination.—An instruction which gives to the jury no standard by which to fix the amount of damages assessed is erroneous.

C. C. ADAMS and B. F. MENEFEE for appellant.

J. J. BLACKBURN for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Plaintiff, R. S. Hambrick, brought this action against defendant, Robert Adams, to recover damages for the breach of a rental contract. Defendant answered that

plaintiff had breached the contract, and counterclaimed for damages amounting to $35. The jury returned a verdict in favor of plaintiff for $175. Defendant appeals.

Defendant owns a small tract of land near Crittenden, Grant County, Kentucky. On this land there are located a large house, two barns, and several other buildings. The house is two stories high in front and one story in the rear. In the front part of the house are eight rooms, four upstairs and four down. The rooms on each side of the house are divided by hallways above and below. A portion of this house, consisting of the rooms on the north side of the house, a stock barn, and certain feed lots adjoining the pond and surrounding the barns had been leased to A. G. Lawrence, the foreman of a construction crew, with the privilege of placing tents for his crew in the yard, and the lot next to the pond. His lease was to continue until he had finished his work of grading the railroad track nearby. Lawrence took possession of the portion of the premises leased to him, stretched tents, stored feed supplies, appliances and equipment, and converted one of the six rooms into an office and another one into a commissary. The other four rooms were used for cooking and eating and sleeping. The only colored person who occupied the apartments was a cook, who had a room in the rear. While Lawrence was thus in possession, plaintiff, on the 18th day of February, went out to defendant's home for the purpose of renting the place. Defendant took plaintiff to the house and showed him the situation. Plaintiff returned to his home some distance away, and after consulting his wife, returned to defendant's home and entered into a lease with him. Under the terms of this lease plaintiff was to have certain fields to be planted in tobacco, and another field to be planted in corn. Defendant was to have half of the tobacco and half of the corn. The other half was to be plaintiff's. The lease further provided that plaintiff was to have pasture for one cow and two horses, and the use of the house free of rent, during the continuance of the lease. After the lease was executed, plaintiff returned to his home. On the evening of March 11 plaintiff returned with his family and household goods. He had not advised the defendant of the time when he would arrive. There was some plunder in the rooms on the south side, but the evidence shows that this could have been removed in a very few minutes. Plaintiff went to defendant and

made complaint of the fact that the house was occupied. He claims that defendant told him that he would see Lawrence in a day or two and get him to vacate some of these rooms. Plaintiff stored his household goods in the town nearby, and never returned to the house or thereafter asked possession.

Defendant pleaded that the real contract between him and plaintiff was that plaintiff was to have the south portion of the premises until Lawrence moved away. Thereafter he was to have the whole house, but by mutual mistake of the parties the contract as written called for the whole house instead of the four rooms and other portions of the premises until the premises were vacated by Lawrence, as agreed on by him and plaintiff. The weight of the evidence tends to show that such was the agreement of the parties. Defendant's evidence further shows that he told plaintiff to return to the house and tell Lawrence to move his things out, but plaintiff failed to do this.

It is apparent that the case turns on whether or not the whole house was rented to plaintiff, or only a portion thereof. If, as a matter of fact, only a portion of the house was rented, the mere fact that a little plunder was in one of the rooms which might have been removed in a few minutes, when plaintiff arrived, without any notice of his coming, would not amount to a refusal to put plaintiff in possession, in view of the fact that defendant was given no opportunity whatever to have the plunder removed. If, on the other hand, the whole house was rented to plaintiff, the possession of a portion thereof by the construction crew, who it is not contended had any purpose of leaving until their work was completed, would amount to a refusal to put plaintiff in possession. One of the instructions given by the trial court authorized a finding in favor of plaintiff if he rented only a portion of the house and defendant refused to put him in possession. This instruction was erroneous; for, as said before, the circumstances did not amount to a refusal, if, as a matter of fact, only a portion of the house was rented. The jury were also told that if they found for plaintiff, to find the reasonable rental value of the contract to him. This instruction gives to the jury no standard by which to fix the amount of damages, and is therefore erroneous.

On another trial the court will instruct the jury as follows:

"1. You will find for the plaintiff, and fix his damages as provided by instruction No. 2, unless you believe as in instruction No. 3.

"2. If you find for plaintiff you will award him such damages as you believe from the evidence will fairly represent the value of the use of the house and pasturage of one cow and two horses, and his half of the market value of the crops, which he, by ordinarily good husbandry, could have raised on the leased land, less the cost of raising the whole crops, including his services as part of the cost.

"3. If you believe from the evidence that the true agreement between plaintiff and defendant was that plaintiff was to have only the south portion of the house until the construction crew vacated the premises, and that by mutual mistake of the parties this part of the contract was omitted from the written contract, you will find for the defendant."

Judgment reversed and cause remanded for new trial consistent with this opinion.