**J. S. McHARGUE, Appellant,**

v.

**Sam SCOTT, Appellee.**

**Sam SCOTT, Appellant,**

v.

**J. S. McHARGUE, Appellee.**

Court of Appeals of Kentucky.

Oct. 11, 1957.

Elmer Drake, and Virgil Fowler, Lexington, for McHargue.

Thomas R. Underwood, Jr., Lexington, for Scott.

STANLEY, Commissioner.

The appellee, Sam Scott, recovered of the appellant, J. S. McHargue, a judgment for $3,225.08 for damages sustained by reason of the breach of a contract of rental of a farm for a term of five years beginning January 1, 1954. Nothing was adjudged McHargue on his counterclaim for damages. The court tried the case without a jury. McHargue appeals and Scott cross-appeals, claiming he is entitled to a larger judgment.

The contract (drawn by or for McHargue is specific in its terms as to Scott's operation of a dairy, the cultivation of crops and occupancy of a dwelling house. It stipulates his compensation as $150 monthly for running the dairy, certain wages for extra work and fifty per cent of the profits derived from the raising of hogs. While the contract bound Scott to produce customary farm crops as might be desirable, it is silent as to what his share or compensation should be. However, the parties seem to have regarded it as being fifty per cent of the net proceeds.

On September 17, 1954, McHargue notified Scott in writing that he would refuse to continue the contract beyond that year and that Scott must vacate the premises. Scott responded with a denial of his breach of the contract and a notice of his intention to remain on the farm. McHargue sold his dairy cows in February, 1955, and then Scott moved and filed this suit for damages.

The landlord's complaints of mismanagement are many. The demands and faultfinding were those of a hard taskmaster. This, however, was not a contract between a master and servant but was a contract between a landlord and tenant which allowed broad discretion in management and cultivation. The results of the year's operation do not reflect any substantial neglect or mishandling. McHargue had written a letter on November 29, 1954, to a farmer in Bourbon County in which he highly commended Scott as a tenant. The letter states that because of ill health and age the writer was selling his farm and had advised Scott to be on the lookout for another place in 1955. We fully concur in the finding that McHargue breached his contract. The lessee was,

therefore, entitled to compensatory damages commensurate with any loss or injury he could reasonably prove.

The court appreciated the difficulty of ascertaining the damages. His computation of damages for the year 1955 is questioned by the appellant.

■ At the time of the trial the 1955 crops had been practically harvested. In relation to the evidence concerning that year the court considered the tenant's 1954 income from McHargue's farm and dairy and had regard for changed conditions. Of course, there was deducted from the estimated income what Scott had earned as a tenant on another farm. These damages were no longer conjectural or speculative but could be ascertained with reasonable mathematical certainty. As shown by a note in 104 A.L.R. 161, it is generally held that the lessee of farm lands is entitled to recover the loss of any profits he might have made from the demised land as damages for his failure to receive possession. In Smith v. Phillips, 16 K.L.R. 615, 29 S.W. 358, we commented upon the variableness of conditions and the conjectural character of estimating anticipated farm profits. The damages sought in that case were based entirely on estimates of what the tenant probably could earn. They were indeed conjectural and therefore could not be recovered of the landlord. This decision was followed in Turpin v. Jones, 189 Ky. 635, 225 S.W. 465, 466, in which it was said there was no basis whatever on which to estimate "before the maturing of the crop the damages resulting from the breach of the contract, and any attempt to do so can only amount to an effort to recover conjectural profits." But it was also stated,

"On the other hand, if there is a postponement of the action until the crop is produced and ready for market, the means of more accurately arriving at the amount of the damages sustained can be more definitely known and applied, for it will then be known whether there was a drouth or favorable season for producing the crop, the character of crops raised in the vicinity of the land, and also the value on the market of the crops produced."

The contract involved in Adams v. Hambrick, 161 Ky. 797, 171 S.W. 398, 399, is like the one we have here. The breach of the contract in the Adams case was the failure of the landlord to put the tenant into possession. In preparing proper instructions to be given on another trial, we recognized that the measure of recovery the tenant was entitled to, besides the value of the use of the house and pasture, was a share of the market value of the crops which the tenant "by ordinarily good husbandry, could have raised on the leased land, less the cost of raising the whole crops, including his services as part of the cost."

As is pointed out in Turpin v. Jones, above cited, it is apparent from the opinion that the Adams action was brought after the crop had matured and was ready for market. Such are the damages awarded in the case at bar for the year 1955. The damages were ascertainable and provable with practical certainty. The amount adjudged seems to be fair and as correct as could be reasonably calculated.

On the cross-appeal Scott contends that he was entitled to recover as damages for the years 1956, 1957 and 1958 the fair value of his entire contract, less its costs. His claim is twofold, namely, (a) for loss of future or anticipated profits from crops which the tenant could have raised during those years, and (b) for specific damages resulting from the breach of portions of the contract asserted to be severable from the crop-raising provisions.

■ (a) The argument to sustain this claim is rested upon Adams v. Hambrick, 161 Ky. 797, 171 S.W. 398, cited above, some local cases (which involve different

conditions) and some foreign cases. As stated, the Adams opinion is clarified in Turpin v. Jones, 189 Ky. 635, 225 S.W. 465, cited above, and the decision is regarded as relating to crops already produced and to provable damages. We cannot agree with the further argument that the Turpin case is "out of accord with justice, public policy and modern judicial thinking and should be overruled." We adhere to the distinction between allowing a recovery of provable damages and of conjectural damages which may arise from the breach of a farming contract of tenancy.

■■■ (b) It is contended by the cross-appellant that he should have been allowed damages for breach of the contract as it relates to the operation of the dairy for a salary of $150 a month and the right to occupy the dwelling house, which character of damages is usually not as prospective or speculative as are damages for loss of profits and the like. We, of course, recognize that terms of a contract may be severable in particular items. See, for example, Koppers Co. v. Asher Coal Mining Co., 226 Ky. 492, 11 S.W.2d 114; Business Men's Assurance Company of America v. Eades, 290 Ky. 553, 161 S.W.2d 920. This contract created a variety of relationships between the parties. They were, in general, that of a landlord and tenant of a residence, a contract of hire and the cultivation of crops on shares. But all these provisions were so mutually related and so interdependent as to make it indivisable. The subject matter was the farm. The intention of the parties and the object of the contract were to have the lessee occupy and operate the farm as a whole. It was never contemplated that it should be separately executed. The nature, terms and purposes of the contract show it was to be performed in its entirety even though there were separate considerations to be received by the tenant for performing special parts of the contract. Thus, the contract meets the conventional tests of indivisibility. O'Bryan

v. Mengel Co., 224 Ky. 284, 6 S.W.2d 249; Will B. Miller Co. v. Laval, 283 Ky. 55, 140 S.W.2d 376; Knight v. Hamilton, 313 Ky. 858, 233 S.W.2d 969, 26 A.L.R.2d 212; 12 Am.Jur., Contracts, §§ 315, 316; 17 C.J.S. Contracts, § 331 et seq.

We are of opinion, therefore, that the trial court properly construed the contract as a unit and, as it appears, awarded a judgment for damages of its breach as a unit.

The judgment is affirmed on both the direct and cross appeals.