RENDERED: AUGUST 14, 2025
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2023-SC-0518-DG

COMMONWEALTH OF KENTUCKY                                         APPELLANT


V.

ON REVIEW FROM COURT OF APPEALS
NO. 2022-CA-0900
FAYETTE CIRCUIT COURT NO. 12-CR-00334


DARRELL STRUNK                                                   APPELLEE


**OPINION OF THE COURT BY JUSTICE CONLEY**

**<u>AFFIRMING</u>**

Darrell Strunk accepted a plea agreement whereby he would plead guilty to two counts of second-degree robbery, enhanced by his status as a second-degree persistent felony offender ("PFO"), and receive a sentence of 20-years' imprisonment for the first count and 10-years' imprisonment on the second count, the sentences to be run consecutively for a total of 30 years. Strunk now appeals his sentence to this court, arguing its length violates KRS[1] 532.110(1)(c) and that he should be resentenced to the maximum sentence allowable by law, 20 years. We affirm the Court of Appeals' disposition of this matter and hold the aggregate sentence of 30-years' imprisonment violates the statutory maximum of 20 years set forth in KRS 532.110(1)(c). As to remedy, we find that the procedural posture of Strunk's appeal directs us to remand for

---

[1] Kentucky Revised Statutes.

resentencing and the nature of his illegal sentence merits instruction to the trial court to impose the highest legal sentence, 20-years' imprisonment.

## Factual and Procedural Background

On December 5, 2011, Strunk was a participant in two robberies that occurred on the same day. In the first, Strunk forced his way into a home and demanded money and drugs from the resident. Approximately one hour later, Strunk robbed a business which resulted in the business owner being hit with a car battery and Strunk being shot in the hand. Strunk sought treatment for the gunshot wound and was arrested shortly after.

On March 12, 2012, the Fayette Circuit Grand Jury indicted Strunk for his role in the business robbery. 11 months later, Strunk permitted the Commonwealth to proceed by information to add additional counts from the home robbery to the indictment for the business robbery. Shortly after the additional counts were added, Strunk appeared before the Fayette Circuit Court and entered a guilty plea in accordance with a plea bargain with the Commonwealth. Therein, the Commonwealth: (1) amended the first-degree robbery count in the business robbery to second-degree robbery, enhanced by his second-degree PFO charge; (2) dismissed counts of being a convicted felon in possession of a handgun, theft by unlawful taking, and operating on a suspended or revoked license; (3) amended the first-degree robbery count in the home robbery to second-degree robbery, and (4) amended the first-degree PFO enhancement for the home robbery to a count of second-degree PFO. Strunk in turn agreed to an enhanced sentence of 20 years for the business

2

robbery to be run consecutively to an enhanced sentence of 10 years in the home robbery.  In total, Strunk agreed to serve 30-years' incarceration.

A problem with the proposed sentence was apparent from the outset. During the plea colloquy, Strunk's counsel raised the question of whether the 30-year sentence would violate KRS 532.110(1)(c) which limits the aggregate term for Class C felonies to 20 years.[2]  Strunk urged that the court should sentence him to 20 years.  The Commonwealth responded by asserting it viewed the home robbery charges as a separate case for purposes of the plea, thus avoiding any conflict under *Blackburn v. Commonwealth*, 394 S.W.3d 395 (Ky. 2011).  The trial court accepted the plea and, apparently swayed by the Commonwealth's rationale, sentenced Strunk to 30 years' imprisonment.

Strunk sought post-conviction relief which eventually culminated in his 2020 *pro se* filing of a motion pursuant to CR[3] 60.02 asking the trial court to alter his sentence to comply with KRS 532.110(1)(c).  That motion, initially withdrawn and then resubmitted with the assistance of counsel, was denied by the trial court.  The trial court determined that while Strunk was technically correct that his sentence did not comply with statute, the sentence was nevertheless permissible because the plea agreement treated the two robberies

---

[2] KRS 532.110(1)(c) provides,

When multiple sentences of imprisonment are imposed on a defendant for more than one (1) crime. . . the aggregate of consecutive indeterminate terms shall not exceed in maximum length the longest extended term which would be authorized by KRS 532.080 for the highest class of crime for which any of the sentences is imposed[.]

[3] Kentucky Rules of Civil Procedure.

as separate indictments. That fact, in addition to Strunk's knowing and voluntary entry into the deal and its relatively favorable terms, led the trial court to deny the motion.

Strunk appealed. The Court of Appeals reversed the trial court, holding first that Strunk's 30-year sentence did indeed violate KRS 532.110(1)(c) because the highest class of crime for which Strunk was convicted was a Class C felony and accordingly Strunk's maximum sentence, including any consecutive sentences, could not exceed 20 years. The Court of Appeals further concluded that *McClanahan v. Commonwealth*, 308 S.W.3d 694 (Ky. 2010), precluded any waiver of the statutory limit and that KRS 532.110 operated as a limit upon all crimes presented during sentencing, regardless of whether those crimes were in a single or multiple indictments. The Court of Appeals reversed the denial of Strunk's CR 60.02 motion and remanded with instructions to the trial court to impose a new sentence compliant with our sentencing guidelines.

The remedy determined by the Court of Appeals was apparently not anticipated by the Commonwealth which for the first time raised the question of the proper remedy in its petition for rehearing. The Court of Appeals, content in its reliance on *Duncan v. Commonwealth*, 640 S.W.3d 84 (Ky. App. 2021), denied the petition. The Commonwealth moved for discretionary review

4

with this Court, RAP[4] 44, and we granted the motion.  Both parties made oral

arguments to the Court and this opinion results therefrom.

## Standard of Review

> We review the denial of a CR 60.02 motion under an abuse of
> discretion standard. *Brown* [*v. Commonwealth*, 932 S.W.2d 359,
> 361 (Ky. 1996)]. The test for abuse of discretion is whether the trial
> judge's decision was arbitrary, unreasonable, unfair, or
> unsupported by sound legal principles. *Commonwealth v. English*,
> 993 S.W.2d 941, 945 (Ky.1999) (citing 5 Am.Jur.2d *Appellate
> Review* § 695 (1995)). Therefore, we will affirm the lower court's
> decision unless there is a showing of some "flagrant miscarriage of
> justice." *Gross* [*v. Commonwealth*, 648 S.W.2d 853, 858 (Ky.
> 1983)].

*Foley v. Commonwealth*, 425 S.W.3d 880, 886 (Ky. 2014).  In cases involving an

illegal sentence, the abuse of discretion analysis is simplified considerably: "A

sentence that lies outside the statutory limits is an illegal sentence, and the

imposition of an illegal sentence is inherently an abuse of discretion."

*McClanahan*, 308 S.W.3d at 701.

## Analysis

Strunk's case presents two questions.  First, was his 30-year sentence

imposed in violation of the law? And second, if the sentence was illegal, what is

the proper remedy?  As to the first question, this Court, as well as the parties,

have little difficulty in concluding that the sentence violates KRS 532.110(1)(c).

As to remedy, we hold the proper analysis to follow is set forth in *Phon v.

Commonwealth*, 545 S.W.3d 284 (Ky. 2018), and the Court of Appeals was

---

[4] Kentucky Rules of Appellate Procedure.

5

correct to remand Strunk's case to the trial court for resentencing in accordance with the statutory limit.

Before we discuss the major questions, we first address the Commonwealth's failure to argue their preferred remedy (remand for withdrawal of the guilty plea) before the Court of Appeals. As noted earlier, the Commonwealth only argued that the proper remedy was to grant the opportunity to withdraw the plea in the petition for rehearing after the Court of Appeals remanded for resentencing only. Strunk now contends this argument is not preserved and therefore should not be addressed. Strunk is, of course, correct that we disapprove of attempts to make new arguments upon the failure of those previously set forth in the parties' briefing. *See* RAP 43(B)(1)(a) ("[A] petition for rehearing shall be limited to a consideration of the issues argued on the appeal[.]"); *Johnson v. Commonwealth*, 450 S.W.3d 707, 713 (Ky. 2014) ("[E]rror raised for the first time in a petition for rehearing will not be considered."). However, here the unpreserved issue relates not to any error made by the trial court or even the substantive holding of the Court of Appeals; rather, the Commonwealth's argument addresses the conclusion of the appellate court. In accepting review of Strunk's case and resolving the substantive issue—the legality of the sentence—this Court by necessity must determine the proper remedy of the illegal sentence. Because we are not beholden to the resolution reached by the Court of Appeals, we are obligated to find the correct remedy upon our own analysis.

6

Preservation resolved, we move to the legality of Strunk's sentence. Although this issue forms the substantive basis of the appeal, at this stage the Commonwealth appears to concede that the sentence imposed violates KRS 532.110. Strunk, unsurprisingly, agrees. Accordingly, we will spend only a brief moment addressing the legality of the sentence before moving to the true point of contention, the proper remedy.

KRS 532.110(1)(c) provides,

> When multiple sentences of imprisonment are imposed on a defendant for more than one (1) crime. . . the aggregate of consecutive indeterminate terms shall not exceed in maximum length the longest extended term which would be authorized by KRS 532.080 for the highest class of crime for which any of the sentences is imposed[.]

Strunk was convicted of two counts of second-degree robbery, both enhanced by his status as a second-degree persistent felony offender. Second-degree robbery is a class C felony that, unenhanced, carries a possible sentence of five to ten years. KRS 515.030(2); KRS 532.060(2)(c). Enhanced due to a defendant's status as a second-degree persistent felony offender, second-degree robbery carries a potential sentence of 10 to 20 years. KRS 532.080(5); KRS 532.060(2)(b). Thus, in Strunk's case, "the longest extended term which would be authorized by KRS 532.080" is 20 years and the aggregate of his consecutive terms could not exceed that amount.

To the extent the Commonwealth makes any attempt to argue the sentence is legal, its best argument concerns the manner in which the home and business robberies came to be treated together. The business robbery was indicted first and after a significant delay the home robbery was added by

7

information to that initial indictment. Strunk and the Commonwealth apparently treated the two robberies as wholly separate during plea negotiations and that fact convinced the trial court both at sentencing and at Strunk's CR 60.02 hearing that his sentence was legal. However, the trial court erred in this determination.

The reason why can be found in our past jurisprudence. In *Goldsmith v. Commonwealth*, 363 S.W.3d 330, 331 (Ky. 2012), Goldsmith was sentenced in two cases in two counties for six class D felonies. Goldsmith was sentenced in the Hickman County case to 15 years to be probated for five years if Goldsmith completed a drug treatment program. *Id.* Later that day, he was sentenced to the same terms in the Carlisle County case. *Id.* At the time of sentencing, the trial court did not specify if the two sentences were to run concurrently or consecutively. *Id.* When Goldsmith violated his probation on both cases, Goldsmith received a total of 30 years as a result of the Hickman County case being run consecutively to the Carlisle County case. *Id.* at 332.

On appeal, Goldsmith argued the trial court erred in running the Hickman sentence consecutive to the Carlisle sentence. While we agreed the sentence was illegal pursuant to KRS 532.110(2)[5], we also addressed the portion of that statute relevant here, KRS 532.110(1)(c):

---

[5] KRS 532.110(2) states,

If the court does not specify the manner in which a sentence imposed by it is to run, the sentence shall run concurrently with any other sentence which the defendant must serve unless the sentence is required by subsection (3) of this section or KRS 533.060 to run consecutively.

8

> Historically, each crime was charged in its own indictment. In the modern era, multiple crimes may be charged in one indictment. In this case, three crimes were charged in Hickman County under one indictment number, and three in Carlisle County under a different indictment number. [KRS 532. 110] specifically speaks to *crimes* rather than indictments.
>
> . . . .
>
> [I]t is at [the time of sentencing in the Hickman County case] that the trial court had discretion to run the sentence of imprisonment on the three Hickman County crimes concurrently or consecutively with the Carlisle County crimes, or any other crime for which Appellant was imprisoned. *See* KRS 532.110(1) ("the multiple sentences shall run concurrently or consecutively as the court shall determine at the time of sentence"). **The limit at the time is that the aggregate of the indeterminate terms may "not exceed in maximum length the longest extended term which would be authorized by KRS 532.080 for the highest class of crime for which any of the sentences is imposed."** KRS 532.110(1)(c). In this case, that would be 20 years, *see* KRS 532.080, so it is obvious that the trial court would have erred by imposing a total of 30 years of imprisonment had he done so at sentencing rather than at the probation revocation proceeding.

*Id*. at 334 (emphasis added). Thus, the analysis of the Court of Appeals was correct. Regardless of whether the two robberies were contained on the same or different indictments or informations, when the two crimes were sentenced together, KRS 532.110(1)(c) was in force and the statutory cap applied. Strunk's sentence of 30 years violated the 20-year maximum required by the statute and was therefore illegal. We need not discuss whether the trial court abused its discretion in imposing an illegal sentence because the act is inherently an abuse. *McClanahan*, 308 S.W.3d at 701.

And so, we reach the true dispute before us: how should we remedy the illegal sentence imposed upon Strunk? The Commonwealth, following

9

*McClanahan*, argues the proper remedy is remand to the trial court so Strunk may withdraw his guilty plea and a new deal can be worked out. Strunk and the Court of Appeals, following *Phon* and *Duncan*, respectively, believe the correct resolution is to keep the conviction in place, but remand the case for resentencing in accordance with the statutory limits. For the following reasons, we find Strunk and the Court of Appeals to be correct.

The backdrop of our reasoning can be found in a triptych of cases consisting of *McClanahan*, *Phon*, and *Commonwealth v. Moreland*, 681 S.W.3d 102 (Ky. 2023). These three cases lay out our current jurisprudence relating to illegal sentences imposed as a result of a plea deal and set forth two guiding principles: first, already discussed, that we will not entertain the imposition of an illegal sentence even as part of a bargain agreed to by a defendant; and second, that the remedy, either remand for a new deal or resentencing, depends in large part on the procedural posture and relief sought by the defendant. Where the defendant specifically requests withdrawal of his guilty plea, we have sent the case back to afford him the opportunity to do so. *McClanahan*, 308 S.W.3d at 697. But, if he does not so request, we have simply remanded for resentencing within the bounds of the law. *Phon*, 545 S.W.3d at 290.

In *McClanahan*, the defendant entered into a plea agreement to serve 10 years. The agreement included a "hammer clause" that allowed Raymond McClanahan to be released from jail pending sentencing, but stipulated that if he failed to comply with a number of requirements, such as appearing for

10

sentencing, "he 'agree[d] to serve a 40–year sentence' and to forfeit his right to seek probation or shock probation." 308 S.W.3d at 696. McClanahan failed to appear for sentencing. When McClanahan was brought before the court on a bench warrant, he attempted to withdraw his guilty plea, contending he was impaired when he pled guilty. The trial court did not allow him to withdraw the plea and enforced the hammer clause, sentencing McClanahan to 35-years' imprisonment.[6]

On appeal, McClanahan argued, in part, that the trial court erred when it denied his motion to withdraw his guilty. The gravamen of our analysis addressed the question of illegal sentences in the plea context, with McClanahan arguing that his sentence violated KRS 532.110(1)(c) which set a cap of 20 years on the sentence he received, much as is the case here. The Commonwealth, again in an analogy to the present case, contended that McClanahan got what he bargained for and cited to now-overruled precedent allowing a defendant to waive the statutory maximum. We found the sentence to be illegal and, addressing the question of waiver, we held the limits could not be waived as "nothing in the language of the statute to suggest that the General Assembly intended to excuse plea agreements from the mandatory provisions contained in the statute." *McClanahan*, 308 S.W.3d at 701. As a result of the illegal sentence we determined that pursuant to RCr[7] 8.10,[8] "the

---

[6] The sentence was reduced because the Commonwealth had done its math incorrectly. The individual charges in the plea only added up to 35 years, not 40.

[7] Kentucky Rules of Criminal Procedure.

[8] RCr 8.10 states, in relevant part,

11

plea agreement entered into in this case should have been rejected. . . .
Accordingly, we reverse and remand this matter to the trial court for further proceedings permitting Appellant to withdraw his guilty pleas." *Id.* at 702.

Eight years later, we rendered our decision in *Phon*. There, 16-year-old Sophal Phon shot and killed two people in a home invasion and attempted to kill his two victims' 12-year-old daughter. Prior to trial, the Commonwealth announced its intention to seek the death penalty for Phon. Phon's counsel advised Phon to accept a guilty plea and present a case of mitigation before the jury. Phon did plead guilty, but the Commonwealth still sought the death penalty. Phon presented a "robust" case of mitigation evidence before the jury and the jury ultimately recommended the newly-enacted punishment of life without parole ("LWOP"), which the trial court imposed.

On appeal, Phon did not argue he should have been allowed to withdraw his guilty plea, but instead sought only resentencing. We determined that Phon's sentence was constitutionally sound, but nevertheless reversed the trial court because the sentence was not statutorily permitted for minor offenders.[9]

---

> If the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, advise the defendant personally in open court or, on a showing of good cause, in camera, that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw the plea, and advise the defendant that if the defendant persists in that guilty plea the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.

[9] As we summarized in *Commonwealth v. Ullman*, 714 S.W.3d 373, 389 (Ky. 2024),

> At the time Phon was sentenced, KRS 640.040 provided that "[a] youthful offender convicted of a capital offense regardless of age may be sentenced to a term of imprisonment appropriate for one who has committed a

12

545 S.W.3d at 299-307. In our analysis, we observed that "there is a fine distinction between a plea for relief from a conviction and relief through remedy of a *sentence*" which allowed Phon to succeed on what would otherwise have been an untimely appeal. *Id.* at 305.

> Thus, even if CR 60.02 may not apply to judicial errors in attacking a *conviction*, this is separate and distinct. It is a limited attack on the illegality of a sentence and the remedy is not reversal of a conviction, but correction of a sentence. . . . It is logical that such illegal sentences are considered void and correctable at any time, as contrasted to an attack on the underlying conviction.

*Id.* Finally, we determined that the proper remedy was remand to the trial court to impose the highest remaining valid sentence, life without parole until Phon had served 25 years:

> [W]e find it well-grounded in case law, both within this jurisdiction and without, that the proper procedure is to remand this case back to the Warren Circuit Court to correct the unlawful sentence and impose a legal sentence. This procedure is not unheard of in Kentucky. In *Cummings* [*v. Commonwealth*, 226 S.W.3d 62, 68 (Ky. 2007)], the Court determined the sentence was above the maximum aggregate sentence applicable. There, this Court stated that "[i]n other cases in which the statutory limit was exceeded, we remanded to the trial court for imposition of sentence which would fulfill the statutory maximum." Thus, the Court determined it was "necessary for the trial court to fashion a new sentence which" did not violate the aggregate maximum sentence statute. In *Skiles* [*v. Commonwealth*, 757 S.W.2d 212, 215 (Ky. 1988)] and *Neace* [*v. Commonwealth*, 978 S.W.2d 319, 322 (Ky. 1998)], this Court

---

Class A felony and may be sentenced to life imprisonment without benefit of parole for twenty-five (25) years." In the interim, the legislature added LWOP to our penal code as an available penalty but "LWOP was never added as an enumerated sentence within [KRS 640.040]." This Court had previously clarified in *Shepherd v. Commonwealth*, 251 S.W.3d 309 (Ky. 2008), that LWOP was not an available sentence for a youthful offender convicted of a capital crime pursuant to the plain language of KRS 640.040.

(Internal citations omitted).

13

affirmed a trial court's modification of an unlawful sentence. Therefore, this Court has a firm basis to remand the case back to the trial judge to *correct* the unlawful sentence and impose a sentence of LWOP 25.

Here, the jury made factual findings that the Commonwealth had proven the presence of aggravating factors to substantiate the imposition of LWOP 25, LWOP, or capital punishment. There has been no error found that would undermine these factual findings. Thus, the legal aggravated sentences presented to the jury have been diminished to only one: LWOP 25. Additionally, in [*Dep't of Public Welfare of Kentucky v. Polsgrove*, 53 S.W.2d 341, 342 (Ky. 1932)], this Court's predecessor held that "the whole sentence is not illegal and void but valid to the extent authorized by statute." Therefore, the sentence beyond the highest permissible remaining sentence, LWOP 25, is illegal and void. The trial court must now correct the sentencing error by imposing the highest remaining valid sentence: LWOP 25. As this Court stated in *Neace*, the "sentence must be corrected to conform to the law." Such conformity with the law in this particular case is clear: the sentence of LWOP 25 must be imposed.

*Id*. at 309 (internal citations omitted).

For the purposes of Strunk's appeal, these two cases set forth the remedial paths open to a defendant subject to an illegal sentence imposed through the plea-bargaining process. Part of McClanahan's grounds for appeal was the denial of his motion to withdraw his guilty plea. Accordingly, when crafting a remedy, we sustained his allegation of error in that respect and remanded to allow him to withdraw the plea. Taking the alternate path, *Phon* was a collateral attack on the legality of the sentence itself. Phon did not seek to overturn his conviction, he merely sought correction of the sentence, a desire which we indulged by remanding solely for resentencing. Thus, these two cases demonstrate that the relief provided by the appellate courts is in large part dependent on the error alleged by a defendant. If the conviction itself is

14

infirm, we vacate the conviction. If no party alleges a defect in the conviction, only with the sentence, then we remand for resentencing.

We also observe that our cases imply differing remedial options based upon how a defendant brings his appeal before this Court. As we wrote in *Phon*, "[w]e are loathe to hold [that an appeal of an illegal sentence can be brought at any time], for, as we have repeatedly stated, 'a CR 60.02(f) motion must be made "within a reasonable time,"'" 545 S.W.3d at 303, but,

> Illegal sentences must always be correctable. To hold otherwise would fly in the face of the separation of powers doctrine and grant the judiciary powers it was never intended to hold. Limiting the court's ability to correct an unlawful sentence would be counter to the policies inherent in the judiciary system.

*Id*. at 307. This reasoning implies that an attack on the conviction itself remains subject to the "within a reasonable limit" in CR 60.02. The procedural postures of *McClanahan* and *Phon* bear out this implication. McClanahan sought to withdraw his guilty plea, which, by extension, meant the reversal of his conviction and he raised the issue on direct appeal. By contrast, *Phon* was before the Court on a CR 60.02 motion seeking only a modification of his sentence, a motion that would have been untimely had he sought anything else. We have, thereby, indicated a difference in the available remedies based upon the relief sought and the procedural vehicle used to seek it.

We have previously made note of the two remedial paths detailed in *McClanahan* and *Phon*. In *Moreland*, Daniel Moreland accepted a plea bargain in two indictments. In the first indictment, he pled guilty to two counts of first-degree sexual abuse and agreed to serve two consecutive sentences of 10 years.

15

In the second indictment, he pled guilty to one count of first-degree sexual abuse and again agreed to serve 10-years' imprisonment, concurrent with the first indictment. The plea deal included a provision whereby Moreland would serve the first 10 years of his sentence in prison and the second 10 years would be probated. Moreland served his prison time and was probated in 2018. In 2021, the Commonwealth moved to revoke Moreland's probation, which occurred after a hearing.

Moreland appealed the revocation order, arguing that Kentucky law did not permit the "split sentence" to which he was subject. After first determining the sentence was not legal, we next addressed the proper remedy, acknowledging that we treaded new ground in addressing how to correct an illegal split sentence:

> Given that this is an issue of first impression, the law is not clear as to the proper remedy. The *McClanahan* court did reverse the illegal sentence, remand, and allow the defendant the opportunity to withdraw his guilty pleas. 308 S.W.3d at 702. But that was only because the defendant had specifically sought to withdraw his guilty pleas at the trial court once the illegal hammer clauses were to be enforced against him. *Id.* at 697 ("Appellant moved to withdraw his guilty pleas ...."). Moreland made no such motion in the trial court below and he has not argued on appeal that his guilty plea is invalid. In *Phon v. Commonwealth*, the defendant pled guilty and went to the jury only upon sentencing. 545 S.W.3d 284, 289 (Ky. 2018). Phon, a youthful offender, was sentenced to life without parole contrary to statute. *Id.* at 301. Although we remanded to the trial court in that case, we specifically ordered the trial court to impose the only available sentence that was not illegal: life without parole for twenty-five years. *Id.* at 309. There was no suggestion in *Phon* that the illegal sentence per se tainted his guilty plea. Phon only sought "a new sentencing hearing ...." *Id.* at 290. We also generally hold that when trial courts fail to comply with statutory procedures regarding sentencing, the proper

16

remedy is remand for resentencing. *Arnold v. Commonwealth*, 573 S.W.2d 344, 346 (Ky. 1978).

> Given that we have held this issue is one of illegal sentencing and is a failure to follow the statutory parameters for when probation is available, we hold the remedy in this case is remand for resentencing. This case is more analogous to *Phon* than it is to *McClanahan*. This solution also obviates any claim by either Moreland or the Commonwealth that they have been deprived the benefit of their original bargain because both parties, along with the trial court, may now seek a new bargain on how Moreland shall serve his sentence; including, if agreed to by the parties, a new period of probation in conformity with the statute.

*Moreland*, 681 S.W.3d at 109. *Moreland*, then, provides the framework which we reiterate in our opinion today, noting the remedial paths and basing its resolution on what was being appealed. In Moreland's case, since he sought only to correct his sentence our remedy was to do just that and remand for resentencing.

*Moreland*, however, also suggests a variation on the relief granted in *Phon*. Where *Phon* remanded for the imposition of the highest available legal sentence, *Moreland* remanded for resentencing *in toto*. This distinction is explained by the factual differences between the remaining possible sentences in both cases. As explained in *Phon*, "the only remaining *aggravated* sentence that is permissible under the law here is LWOP 25." *Phon*, 545 S.W.3d at 309. Moreland had more possibilities, since he was not sentenced beyond the maximum allowed; rather, the illegal portion of his sentence was a delayed probation well within the statutory maximum. Thus, Moreland could have been resentenced in accordance with the deal to which he originally agreed (minus the illegal probation) and receive 20-years' imprisonment, or he could

17

have been sentenced to the maximum of thirty-years' imprisonment, or anything else the judge so determined.  In *Moreland*, then, voiding the illegal portion of the sentence left open sentencing possibilities that justified fully resentencing Moreland.  But where the illegal sentence to be voided is simply an excess portion, as in *Phon*, the proper remedy is remand to impose the highest legal sentence.

In all, our case law sets forth a number of principles relating to the proper remedy in cases such as Strunk's.  First, there are two remedial paths to be found in our *McClanahan* and *Phon* decisions.  Second, the path taken depends on what is being attacked on appeal.  If the defendant attacks the conviction itself, which would necessarily obviate the guilty plea, *McClanahan* holds the proper remedy is remand for the opportunity for the defendant to withdraw his guilty plea.  If the appeal is only of the sentence, *Phon* directs the Court to remand for resentencing.  As to the latter scenario, if the illegality of the sentence stems from its being in excess of the legal maximum, resentencing should be limited to the imposition of the highest possible legal sentence, pursuant to *Phon*.  If the sentence is illegal for reasons other than its excessive length, then remand should be for a wholly new resentencing hearing, in accordance with *Moreland*.

With these principles in mind, we address Strunk's case.  In his appeal, Strunk seeks CR 60.02 relief from a sentencing order entered nine years prior to his motion.  The fact alone that Strunk only seeks correction of an illegal sentence is enough to set us upon the correct path, but we also note that were

he seeking CR 60.02 relief for nearly anything other than correction of his sentence, the illegality of which he was aware since sentencing, his appeal would be untimely. *See Gross v. Commonwealth*, 648 S.W.2d 853, 858 (Ky. 1983) (Affirming denial of CR 60.02 relief because motion made five years after resolution of case was not brought within a reasonable time). We are then placed firmly within the *Phon* remedial framework.

Since the proper remedy in this scenario is resentencing, we must then ask whether we should remand for a full resentencing or for resentencing with instructions to impose the highest available legal sentence. Because the illegality in Strunk's sentence stems from its violation of the statutory cap in KRS 532.110(1)(c), we are again guided to apply the same remedy reached in *Phon*. Accordingly, Strunk's case should be remanded to the trial court to sentence Strunk to the highest possible legal sentence: 20-years' imprisonment.

We end our opinion with a brief mention of the Commonwealth's ability to bargain with defendants. The Commonwealth may view this opinion as allowing Strunk to agree to an illegal sentence and then, when he thinks better of his choice, petition the courts to vacate the illegal portion and win, with respect to the bargain, an early release. The Court finds itself unmoved by this argument. Although the prosecutors of this Commonwealth are expected to know the law and duty-bound to follow its mandates, the Commonwealth must remember that it is not the sentencing authority. When the Commonwealth agrees to recommend an illegal sentence it should be fully prepared for the

19

courts, at whatever level, to strike those sentences and bring them into conformity with the law. After all,

> the statutory limitations restrain only the authority of a judge to impose an unlawful sentence; they do not restrain a party's ability to agree to one. We would not compel the executive branch to carry out a sentence of corporal punishment, such as a public whipping, stoning, or dismemberment of the sort that is lawful in some cultures, but not in our own, simply because the defendant consented. Our courts must not be complicit in the violation of the public policy embedded in our sentencing statutes by turning a blind eye to an unlawful sentence, regardless of a defendant's consent.

*McClanahan*, 308 S.W.3d 694 at 701. Correcting the sentence does not deprive the Commonwealth of the benefit of its bargain—benefits, we emphasize, which rest upon a violation of the law—but rather ensures that all parties act within the confines of our statutory guidelines. We expect nothing less with regard to civil contracts and will not hold the Commonwealth to a lower standard here. *Id.* ("A widely recognized principle of contract law is that agreements that run contrary to law, or are designed to avoid the effect of a statute, are illegal and will not be enforced."). We hope that this opinion once again reiterates that the judiciary will not countenance the imposition of an illegal sentence no matter how good of a deal it may be for either Commonwealth or defendant and discourages the creation of such bargains.

### Conclusion

For the foregoing reasons, the opinion of the Court of Appeals is affirmed. We remand to the trial court to impose the lawful sentence of 20-years' imprisonment.

20

All sitting. Lambert, C.J.; Bisig, Goodwine, and Keller, JJ., concur. Thompson, J., concurs in part and dissents in part by separate opinion in which Nickell, J., joins.

THOMPSON, J., CONCURRING IN PART, DISSENTING IN PART: Respectfully, I must dissent in part. While I agree that Darrell Strunk's current sentence is illegal, I disagree with the remedy of simply "lopping off" the excess ten years of incarceration for Strunk. I also disagree with the majority's conclusion that "[c]orrecting the sentence does not deprive the Commonwealth of the benefit of its bargain." When a plea agreement is formed of several components, all of which are interdependent and necessary for the bargain, and this results in an illegal sentence, the problem cannot be remedied by giving the defendant a better bargain than resulted from the negotiation and leaving the Commonwealth with a worse bargain. Instead, the entire bargain is void and all parties must proceed as if the plea did not exist.

Here, Strunk's original charges could have resulted in a lawful sentence of life in prison. The plea agreement reached between the parties included the amending down of charges and a total sentence length to be assigned to the amended charges. To be clear, the amended charges and thirty-year sentence constituted an excellent bargain for Strunk given the original charges and the sentence he faced.[10]

---

[10] In denying Strunk's Kentucky Rules of Civil Procedure (CR) 60.02 motion, the trial court indicated that Strunk received a "tremendous deal" in the plea agreement.

21

Strunk committed two separate heinous robberies—a home invasion and a business invasion—in which he inflicted physical violence on his victims. These are among the most serious of crimes and the details of Strunk's conduct matters.

> On December 5, 2011, Strunk committed two robberies in Fayette County. The first occurred at approximately 1:15 p.m., when William Stinnett reported that an individual in a ski mask, later identified as Strunk, entered his home and hit him with a brick. Stinnett and Strunk struggled. Eventually, Strunk gained control of a handgun in Stinnett's pocket and struck him with it. Strunk demanded money and drugs before pointing the gun at Stinnett and pulling the trigger. Fortunately, the gun did not fire because Stinnett had unloaded the gun the night before. Strunk escaped from the home, still carrying Stinnett's handgun. During the skirmish, Stinnett managed to pull off one of the gloves Strunk was wearing and noticed a tattoo on Strunk's right hand. Subsequent DNA testing of the glove would positively identify the attacker as Strunk.
>
> Approximately one hour after the attack on Stinnett, Strunk approached William Eckler at his place of business. Strunk was again wearing a ski mask, though this time he was brandishing a handgun – possibly the one he took from Stinnett. Strunk demanded that Eckler give him "all his stuff." Eckler pulled out his own handgun and fired it at Strunk, hitting him in the hand. The two men fought over Eckler's weapon. Strunk struck Eckler several times using a nearby car battery before he eventually ran away. The Eckler incident was captured on videotape. Later, Strunk sought treatment for the gunshot wound on his hand at the University of Kentucky Albert B. Chandler Hospital's emergency department. Strunk was arrested shortly thereafter.

*Strunk v. Commonwealth*, 2022-CA-0900-MR, 2023 WL 5808902, at *1 (Ky. App. Sept. 8, 2023) (unpublished) (record citations omitted). How is reducing Strunk's sentence further fair to these victims?

The illegality of the present bargain was the result of the amended charges not being able to result in a total thirty-year sentence length: Had that

been known, the Commonwealth would have likely negotiated differently in how it structured any amendment of charges so that the total desired sentence could lawfully be imposed. If the parties were unable to reach an agreement, the matter would have proceeded to trial. Accordingly, the majority's remedy is inappropriate as it gives Strunk a better deal than that for which he bargained.

I disagree with the majority opinion that the way to categorize our precedent in *McClanahan v. Commonwealth*, 308 S.W.3d 694 (Ky. 2010), *Phon v. Commonwealth*, 545 S.W.3d 284 (Ky. 2018), and *Commonwealth v. Moreland*, 681 S.W.3d 102 (Ky. 2023), is dependent upon whether a defendant asked to withdraw from a plea agreement (as in *McClanahan*) or requested the correction of a sentence (as in *Phon* and *Moreland*) and that the defendant controls the remedy to be given based on the relief requested. Instead, this reasoning is only partially accurate.

While withdrawing from a plea agreement is typically an acceptable remedy, vacation of the illegal portion of a sentence is not always an available remedy. Whether this remedy is available is controlled by the interpretation to be given to the specific plea agreement at issue. Each plea agreement must be treated as the contract it is. Our precedent clarifies what an appropriate remedy is when a portion of a contract is illegal and the whole of the agreement is thereby void. Accordingly, a defendant who requests the correction of an illegal sentence by reducing it, is only entitled to such a remedy if the plea agreement is severable.

23

We have relatively few precedents to compare with the current situation because we previously enforced illegal sentences where the defendant received the benefit of the bargain. *See, e.g., Myers v. Commonwealth*, 42 S.W.3d 594, 597 (Ky. 2001), *overruled by McClanahan*, 308 S.W.3d at 701.

"Generally, plea agreements in criminal cases are contracts between the accused and the Commonwealth, and are interpreted according to ordinary contract principles." *McClanahan*, 308 S.W.3d at 701. "The general rule of law is that a court's construction of a contract should be 'controlled by the intention of the parties.'" *Hammond v. Commonwealth*, 569 S.W.3d 404, 409 (Ky. 2019) (quoting *Gibson v. Sellars*, 252 S.W.2d 911 (Ky. 1952)).

"A widely recognized principle of contract law is that agreements that run contrary to law or are designed to avoid the effect of a statute, are illegal and will not be enforced." *McClanahan*, 308 S.W.3d at 701. This concept is well established. As stated in *Miller v. Ammon*, 145 U.S. 421, 426 (1892), "[t]he general rule of law is that a contract made in violation of a statute is void[.]" *See also Tobacco By-Products & Chem. Corp. v. W. Dark Fired Tobacco Growers Ass'n*, 133 S.W.2d 723, 726 (Ky. 1939); *Chesapeake & O. Ry. Co. v. Maysville Brick Co.*, 116 S.W. 1183, 1186 (Ky. 1909); *Chapman v. Haley*, 80 S.W. 190, 191 (Ky. 1904).

Similarly, as explained in *Williston on Contracts*:

When a bargain is void, it is as if it never existed. It is a legal nullity. In particular, "void ab initio" means a bargain is null from the beginning, as from the first moment when the purported contract was entered into.
. . .

24

> Bargains that are contrary to express statutes or to the policy of express statutes are illegal bargains, and any such illegality voids the entire purported contract. A bargain which is plainly illegal is a nullity and void ab initio.

Void bargains and voidable contracts, 1 *Williston on Contracts* § 1:20 (4th ed.) (citation footnotes omitted).

There is of course an exception to the rule that such a contract is void for an illegality. "The general and well-established rule of the law of contracts [is] that where an agreement is illegal in part, the part which is good may be enforced, provided it can be separate, or severable, from the part which is bad[.]" *Louisville and Jefferson Cty. Metro. Sewer Dist. v. T+C Contracting, Inc.*, 570 S.W.3d 551, 559 (Ky. 2018) (quoting Eugene McQuillin, *The Law of Municipal Corporations,* 10A McQuilling Mun. Corp. § 29:96, Validity generally—Partial invalidity of contract (3d ed. July 2018 updated)). "Where part of a contract is void, the whole contract will not be set aside unless good and bad parts cannot be separated without altering its purpose." *Cox v. Wagner*, 907 S.W.2d 770, 771 (Ky. 1995). However, "[i]t is not always an easy matter to determine just what contracts are severable, and what are not." *T.M. Gilmore & Co. v. W.B. Samuels & Co.*, 123 S.W. 271, 274 (Ky. 1909).

"Primarily the question of whether a contract is entire or severable depends upon the intention of the parties, the objects to be attained and the common sense of the situation." *Bus. Men's Assurance Co. of Am. v. Eades*, 161 S.W.2d 920, 922 (Ky. 1942). Generally, these matters will be determinable from

the terms of the contract itself. *O'Bryan v. Mengel Co.*, 224 Ky. 284, 6 S.W.2d 249, 250 (1928). Therefore,

> [i]n construing [a] contract we must look to and consider all of its language, as well as the subject–matter with which it deals, in the light of the circumstances accompanying the parties at its execution. It is our duty so to construe it as to give it such effect, and none other, as the parties to it intended at the time it was made.

*Myers Bros. v. Hager, S.W.*2d 36, 38 (Ky. 1936).

"The essential test is simple. Did the parties give a single assent to the whole transaction, or did they assent separately to several things?" *Robbins v. Frank Fehr Brewing Co.*, 284 S.W.2d 680, 682 (Ky. 1955). If "[t]he nature, terms and purposes of the contract show it was to be performed in its entirety . . . , the contract meets the conventional tests of indivisibility." *McHargue v. Scott*, 305 S.W.2d 929, 932 (Ky. 1957). Certainly, if there is a mistake of fact upon which the contract rests, the contract may be rescinded. *Cox*, 907 S.W.2d at 771.

The intention of the parties in entering into a plea agreement are generally clear. For example, in *Hammond*, 569 S.W.3d at 409–10, we concluded the parties' intentions in entering into the plea agreement were as follows:

> By entering the plea agreement and waiving jury sentencing, [the defendant] made a knowing and voluntary decision to avoid a potentially longer sentence by entering into an agreement with the Commonwealth for a specific term of years. Conversely, the Commonwealth sought to avoid the possibility that the jury would recommend a light sentence.

26

Each party is trading the uncertainty of a trial's outcome, for the certainty of a negotiated outcome.

In examining the plea agreement, Strunk acknowledged that per the indictments, he was subject to a maximum sentence of life in prison and was charged for the felonies of two counts of robbery in the first degree and being a persistent felony offender (one being PFO-1 and the other being PFO-2), being a convicted felon in possession of a handgun, and theft by unlawful taking.[11] Strunk agreed to plead guilty in exchange for: (1) the amendment of count one (involving the business robbery) to robbery in the second degree with a sentence of five years, to be enhanced to twenty-years of incarceration by reason of being a PFO-2; (2) the dismissal of counts two, three, and four (being a convicted felon in possession of a handgun, theft by unlawful taking, and operating on a suspended or revoked license); (3) the amendment of count seven (involving the home robbery) to robbery in the second degree with a sentence of five years to be enhanced to ten years by reason of being a PFO-2 (amended from PFO-1) to be served "consecutive for a total of 30[.]" The pleas were made with the understanding that "[t]hese are separate indictments."

According to the Commonwealth's appellate brief, "[t]he Commonwealth and Strunk agreed to combine two separate criminal acts—separately indicted—under one indictment number for purposes of the plea agreement[,]" and the Commonwealth could have obtained a separate indictments (rather

---

[11] The charge of operating on a suspended/revoked license was not listed in the plea agreement.

than proceeding under an indictment and an information) and tried the two cases separately, in which case Strunk could have received consecutive sentences on the two first-degree robbery counts for a total of forty years of imprisonment. The Commonwealth argues that *McClanahan* should be followed, and the plea agreement should be rejected as it is an unenforceable contract.

To understand the context of the plea agreement, it is important to note that first-degree robbery is a Class B felony and as such, Strunk faced sentences of ten to twenty years. KRS 532.060(2)(b).[12] With a PFO-2 enhancement, first-degree robbery would be enhanced to sentences of twenty to fifty years. KRS 532.080(5). With a PFO-1 enhancement, for the other first-degree robbery count, Strunk could be sentenced to twenty to fifty years "or life imprisonment[.]" KRS 532.080(6)(a). Additionally, had he been convicted of first-degree robbery, he would have been classified as a violent offender, KRS 439.3401(1)(b)10., and as a violent offender he would have been required to serve 85% of his sentence, KRS 439.3401(4). Of note, while first-degree robbery was classified as a violent offender offense at the time Strunk committed his crimes, 2011 Kentucky Laws Ch. 2 § 99(1)(l) (HB 463), second-degree robbery was not.

Therefore, had Strunk pled guilty to just first-degree robbery PFO-1, and had all his other counts dismissed, he could have been sentenced to between

---

[12] For all statutes I cite, I use the current numbering so long as the relevant provisions have not changed since Strunk committed his crimes.

twenty and fifty years, and had to serve a minimum of 85% of that sentence, or he could have been sentenced to life imprisonment. The Commonwealth certainly could have entered into a plea agreement with Strunk in which a thirty-year sentence would have been permitted and lawful.

Having considered what is contained in the plea agreement, clearly the parties agreed to the amendment of the charges with the understanding that a thirty-year sentence could still be imposed on the basis that separate indictments were involved. Simply put, the plea agreement was one single transaction which would not have been entered into by the Commonwealth if its terms could not be fulfilled.

The majority opinion acknowledges that "[a] problem with the proposed sentence was apparent from the outset" as "[d]uring the plea colloquy, Strunk's counsel raised the question of whether the 30-year sentence would violate KRS 532.110(1)" and "urged that the court should sentence him to 20 years." From this acknowledgement, it appears that from the outset, Strunk was engaging in gamesmanship in endeavoring to obtain a better bargain than that to which he had agreed.

I would treat this plea agreement as a not severable contract which, due to illegality as to the sentence provision where this contract was subject to a single assent for the whole transaction, it is void. If the plea agreement is void, the only logical solution is for the parties to be placed in the position they were before the entry of the plea agreement. They may renegotiate a plea, or Strunk may proceed to trial on the charges.

The precedents we do have which the majority opinion relies upon for its remedy, *Phon* and *Moreland*, are procedurally distinct and remedies that were appropriate there are simply inappropriate here. A different outcome is required here because the facts are different.

I agree with *Commonwealth v. Reed*, 374 S.W.3d 298, 301 (Ky. 2012), that where a plea agreement does not provide for the illegal portion of a sentence, the illegal portion of the sentence may be appealed and reversed without discarding the valid plea agreement, which remains in place so the parties will receive the benefit of their bargain.

*Moreland* was a unique situation because the parties all clearly intended an illegal split sentence and the remedy could have been to change the bargain to a ten-year sentence (lopping off the illegal probation), or to require the defendant to serve out the twenty-year sentence (as that was what had been imposed, with ten years to be probated). It was reasonable in that unique circumstance to allow for resentencing by the trial court and the parties to determine how to best resolve this situation to get the benefit of the intended bargain. *Moreland* should not govern the outcome here.

When a plea is entered (without an agreement) and the jury recommends a sentence which the trial court imposes, the sentence imposed is not part of any agreement and does not rest upon the plea. In such a case, such as *Phon*, there is no need to set aside the plea. The illegality of the sentence, life without the possibility of parole for a youthful offender, simply had nothing to do with

30

the defendant's guilty plea.[13] Once it was determined that the highest sentence which could lawfully be imposed was life without the possibility of parole for twenty-five years, the appropriate remedy was simply to allow the trial court to correct the sentence to impose that legal sentence. *See also Kimmel v. Commonwealth*, 671 S.W.3d 230, 240 (Ky. 2023) (reducing an erroneous forty-year sentence following a jury trial which exceeded the aggregate cap in KRS 532.110(1)(c)).

If a mistake is made in the trial court's sentencing that is not part of the plea agreement, that of course is subject to correction by resentencing. *See Commonwealth v. Moore*, 664 S.W.3d 582, 591 (Ky. 2023) (vacating imposition of a separate twenty-year sentence for being a PFO in a judgment, where such sentence was not an enhancement of the sentences for other convictions).

*McClanahan* is factually the closest fit with our case because the plea agreement included both sentencing recommendations and the Commonwealth's dismissal of a Class B felony, criminal syndicate.[14] The only reason the plea agreement was illegal was that the aggregate of the defendant's

---

[13] This is borne out by the fact that *Phon* relied on *Dep't. of Pub. Welfare of Kentucky v. Polsgrove,* 53 S.W.2d 341, 342 (1932), and *Ex parte Lange*, 85 U.S. 163, 178 (1873), which both involved illegal sentences that were not the result of plea agreements but were the result of improper jury sentences. *Phon*, 545 S.W.3d at 306.

[14] At the time McClanahan committed his crimes, this was automatically a Class B felony. 2000 Kentucky Laws Reg. Sess. Ch. 417 § 16(2) (S.B. 69), which provides the section then in effect specifies: "Whoever violates this section is guilty of engaging in organized crime, which shall be a Class B felony." This provision has since been amended to add the language: "unless the offense involves only the theft or acquisition of retail merchandise for the purpose of reselling it, in which case it shall be a Class C felony." KRS 506.120(2).

sentences could not exceed the twenty-year cap for the highest degree of crime for which he was convicted, which was second-degree robbery, a Class C felony. *McClanahan*, 308 S.W.3d at 699. That was why the thirty-five-year hammer clause sentence which was ultimately imposed was illegal. It is also why this plea agreement was not severable and could not have been corrected by simply reducing the defendant's sentence to the statutory cap.

The defendant in *McClanahan* requested that he be entitled to withdraw from his plea agreement which resulted in an illegal sentence. This was an acceptable remedy. Our Court noted that as part of the plea agreement, the Commonwealth agreed to dismissal of certain charges and that "[r]eversing this matter and permitting Appellant to withdraw his pleas allows for the reinstatement of those charges, should the Commonwealth elect to do so." *McClanahan*, 308 S.W.3d at 702.

The case of *Duncan v. Commonwealth*, 640 S.W.3d 84, 89 (Ky. App. 2021), in which the Court of Appeals, after considering *McClanahan* and *Phon*, ordered that the portion of the defendant's sentence in excess of the twenty-year cap for Class C and Class D felonies be vacated, is consistent with my reasoning *vis-à-vis McClanahan*. Under the specific facts of *Duncan*, the plea agreement at issue could properly be interpreted as a severable plea agreement. While the Commonwealth dismissed certain charges, it did not amend down any charges, and recommended a sentence of twenty-seven years. *Id.* at 85-86. Although the Court of Appeals did not clarify what the dismissed charges were, typically dismissed charges are of the same or lesser classes to

32

those under which a defendant pleads as part of a plea agreement. There is also no indication that separate indictments were at issue. Therefore, under no set of circumstances could the defendant be sentenced to more time than the statutory cap of twenty years of incarceration, even had the case proceeded to trial. Since the Commonwealth could not get any longer of a sentence by structuring the plea agreement differently, the excess portion of the sentence was severable from the rest of the plea agreement.

Naturally, all defendants want the lowest sentence possible, but where a non-severable plea agreement is illegal, it is void in its entirety and the proper remedy is to place the parties back in the position they were before they made their bargain. The victims of these violent home and business invasions are entitled to sleep with the knowledge that this violent criminal will remain incarcerated, not receive a better bargain than what the Commonwealth determined was appropriate for these crimes, a bargain which could have legally been reached through a differently structured plea agreement or proceeding to trial.

Accordingly, I dissent in part as I would reverse the Court of Appeals as to the appropriate remedy.

Nickell, J., joins.

COUNSEL FOR APPELLANT:


Russell M. Coleman
Attorney General of Kentucky

Melissa A. Pile
Assistant Attorney General


COUNSEL FOR APPELLEE:

John Gerhart Landon
Landon Law, PLLC